**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF SOUTH CAROLINA

Case number *(if known)* _____    Chapter    **11**

☐ Check if this an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| **1.** | **Debtor's name** | **Ashley I, LLC** |
| **2.** | **All other names debtor used in the last 8 years** Include any assumed names, trade names and *doing business as* names | |
| **3.** | **Debtor's federal Employer Identification Number** (EIN) | **56-2307741** |

| | | |
|---|---|---|
| **4.** | **Debtor's address** | **Principal place of business** |

**105 Braswell Street
North Charleston, SC 29405**
Number, Street, City, State & ZIP Code

**Charleston**
County

**Mailing address, if different from principal place of business**

**111 E. Hargett Street
Raleigh, NC 27601**
P.O. Box, Number, Street, City, State & ZIP Code

**Location of principal assets, if different from principal place of business**

Number, Street, City, State & ZIP Code

| | | |
|---|---|---|
| **5.** | **Debtor's website** (URL) | |
| **6.** | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership |
| | | ☐ Other. Specify: _____ |

| Debtor | Ashley I, LLC | Case number (*if known*) |
|---|---|---|
| | Name | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

■ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53AB))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80a-3)

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.naics.com/search/.

__5313__

**8. Under which chapter of the Bankruptcy Code is the Debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check all that apply:*

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (amount subject to adjustment on 4/01/16 and every three years after that).

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operation, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| | District | When | Case number |
|---|---|---|---|
| | | | |
| | District | When | Case number |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list

☐ No

■ Yes.

| Debtor | Ashley II of Charleston, LLC | Relationship to you | Affiliate |
|---|---|---|---|
| District | South Carolina | When | Case number, if known |

| Debtor | Ashley I, LLC | Case number *(if known)* |
|---|---|---|
| | Name | |

**11. Why is the case filed in this district?**

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

███ **Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ■ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| Debtor | **Ashley I, LLC** | | Case number (*if known*) | |
|---|---|---|---|---|
| | Name | | | |

---

**Request for Relief, Declaration, and Signature**

---

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is trued and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     **February  8, 2016**
                 MM / DD / YYYY

**X** **/s/ Prodel, LLC, Manager, By:  Craig A. Briner**          **Prodel, LLC, Manager, By:  Craig A. Briner**
Signature of authorized representative of debtor          Printed name

Title     **Manager**

---

**18. Signature of attorney**

**X** **/s/ G. William McCarthy Jr.**          Date  **February  8, 2016**
Signature of attorney for debtor                          MM / DD / YYYY

**G. William McCarthy Jr.**
Printed name

**McCarthy Law Firm, LLC**
Firm name

**P. O. Box 11332**
**Columbia, SC 29211-1332**
Number, Street, City, State & ZIP Code

Contact phone   **803-771-8836**          Email address   **bmccarthy@mccarthy-lawfirm.com**

**2762**
Bar number and State

**Fill in this information to identify the case:**

Debtor name    **Ashley I, LLC**

United States Bankruptcy Court for the:    DISTRICT OF SOUTH CAROLINA

Case number (if known) _____

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule*
☐   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐   Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **February  8, 2016**     X **/s/ Prodel, LLC, Manager, By:  Craig A. Briner**
                                                Signature of individual signing on behalf of debtor

                                                **Prodel, LLC, Manager, By:  Craig A. Briner**
                                                Printed name

                                                **Manager**
                                                Position or relationship to debtor

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com         Best Case Bankruptcy

## United States Bankruptcy Court
### District of South Carolina

In re  **Ashley I, LLC**

_____

Debtor(s)

Case No. _____

Chapter    **11**    _____

# STATEMENT REGARDING AUTHORITY TO SIGN AND FILE PETITION

I, **Prodel, LLC, Manager, By:  Craig A. Briner**, declare under penalty of perjury that I am the **Manager** of  **Ashley I, LLC**, and that the following is a true and correct copy of the resolutions adopted by the Board of Directors of said corporation at a special meeting duly called and held on the 8th day of January, 2016.

"Whereas, it is in the best interest of this corporation to file a voluntary petition in the United States Bankruptcy Court pursuant to Chapter 11 of Title 11 of the United States Code;

Be It Therefore Resolved, that **Prodel, LLC, Manager, By:  Craig A. Briner**, **Manager** of this Corporation, is authorized and directed to execute and deliver all documents necessary to perfect the filing of a chapter **11** voluntary bankruptcy case on behalf of the corporation; and

Be It Further Resolved, that **Prodel, LLC, Manager, By:  Craig A. Briner, Manager** of this Corporation is authorized and directed to appear in all bankruptcy proceedings on behalf of the corporation, and to otherwise do and perform all acts and deeds and to execute and deliver all necessary documents on behalf of the corporation in connection with such bankruptcy case, and

Be It Further Resolved, that **Prodel, LLC, Manager, By:  Craig A. Briner, Manager** of this Corporation is authorized and directed to employ **G. William McCarthy Jr. 2762**, attorney and the law firm of **McCarthy Law Firm, LLC** to represent the corporation in such bankruptcy case."

Date  **February  8, 2016**

_____

Signed  **/s/ Prodel, LLC, Manager, By:  Craig A. Briner**

**Prodel, LLC, Manager, By:  Craig A. Briner**

Resolution of Board of Directors
of January 8, 2016
**Ashley I, LLC**


Whereas, it is in the best interest of this corporation to file a voluntary petition in the the United States Bankruptcy Court pursuant to Chapter **11** of Title 11 of the United States Code;

Be It Therefore Resolved, that **Prodel, LLC, Manager, By:  Craig A. Briner, Manager** of this Corporation, is authorized and directed to execute and deliver all documents necessary to perfect the filing of a chapter **11** voluntary bankruptcy case on behalf of the corporation; and

Be It Further Resolved, that **Prodel, LLC, Manager, By:  Craig A. Briner, Manager**  of this Corporation is authorized and directed to appear in all bankruptcy proceedings on behalf of the corporation, and to otherwise do and perform all acts and deeds and to execute and deliver all necessary documents on behalf of the corporation in connection with such bankruptcy case, and

Be It Further Resolved, that **Prodel, LLC, Manager, By:  Craig A. Briner, Manager** of this Corporation is authorized and directed to employ **G. William McCarthy Jr. 2762**, attorney and the law firm of **McCarthy Law Firm, LLC** to represent the corporation in such bankruptcy case.

Date ~~February 8, 2016~~   January 8, 2016     Signed   **/s/ John A. Mazzarino, for Ashley I, LLC**


Date ~~February 8, 2016~~   January 8, 2016     Signed   **/s/ John A. Mazzarino, for Cherokee Ashley, LLC**

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | **Ashley I, LLC** |
| United States Bankruptcy Court for the: | **DISTRICT OF SOUTH CAROLINA** |
| Case number (if known): | |

☐ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Charleston Recycling & Disposal 4045 Bridgeview Drive North Charleston, SC 29405** | | **Accounts Payable** | | | | **$4,733.40** |
| **Boasso America Corporation 100 Intermodal Drive Chalmette, LA 70043** | | **Accounts Payable** | | | | **$2,812.74** |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                                                                  Best Case Bankruptcy

<table>
<tr><td><b>Fill in this information to identify the case:</b></td></tr>
</table>

Debtor name      **Ashley I, LLC**

United States Bankruptcy Court for the:    DISTRICT OF SOUTH CAROLINA

Case number (if known)  _____

☐ Check if this is an
amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                     12/15

| Part 1: | Summary of Assets |
|---|---|

1.  ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

    **1a. Real property:**
    Copy line 88 from *Schedule A/B*...................................................................................................... $   **5,165,291.00**

    **1b. Total personal property:**
    Copy line 91A from *Schedule A/B*..................................................................................................... $   **9,971.27**

    **1c. Total of all property:**
    Copy line 92 from *Schedule A/B*........................................................................................................ $   **5,175,262.27**

| Part 2: | Summary of Liabilities |
|---|---|

2.  ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................................... $   **18,638,332.65**

3.  ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

    **3a. Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 6a of *Schedule E/F*........................................................................ $   **74,104.68**

    **3b. Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 6b of *Schedule E/F*................................................. +$   **7,546.14**

4.  **Total liabilities** ...........................................................................................................................
    Lines 2 + 3a + 3b                          $   **18,719,983.47**

---

**Fill in this information to identify the case:**

Debtor name __**Ashley I, LLC**__

United States Bankruptcy Court for the: __DISTRICT OF SOUTH CAROLINA__

Case number (if known) _____

☐ Check if this is an
    amended filing

---

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                              12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:      Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

3.   **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1.. **Bank of America** | **Checking** | **3444** | **$7,971.27** |

4.     **Other cash equivalents** *(Identify all)*

5.     **Total of Part 1.**
       Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.          | **$7,971.27** |

**Part 2:      Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
■ Yes Fill in the information below.

7.     **Deposits, including security deposits and utility deposits**
       Description, including name of holder of deposit
       **Lease Deposit**
       **Kirkman Broadcasting, Inc.**
       **60 Markfield Drive, Unit 4**
       7.1.. **Charleston, SC  29407**                                                                          **$2,000.00**

8.     **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
       Description, including name of holder of prepayment

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor    **Ashley I, LLC**                                                    Case number *(If known)* _____
          Name

9.    **Total of Part 2.**                                                    | $2,000.00 |
      Add lines 7 through 8. Copy the total to line 81.

**Part 3:**    **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

    ■ No.  Go to Part 4.
    ☐ Yes Fill in the information below.

**Part 4:**    **Investments**

13. **Does the debtor own any investments?**

    ■ No.  Go to Part 5.
    ☐ Yes Fill in the information below.

**Part 5:**    **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

    ■ No.  Go to Part 6.
    ☐ Yes Fill in the information below.

**Part 6:**    **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

    ■ No.  Go to Part 7.
    ☐ Yes Fill in the information below.

**Part 7:**    **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

    ■ No.  Go to Part 8.
    ☐ Yes Fill in the information below.

**Part 8:**    **Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

    ■ No.  Go to Part 9.
    ☐ Yes Fill in the information below.

**Part 9:**    **Real property**

54. **Does the debtor own or lease any real property?**

    ☐ No.  Go to Part 10.
    ■ Yes Fill in the information below.

55.    **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| | | | | |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor   **Ashley I, LLC**                                    Case number *(If known)* _____
_____
Name

| | | | | | |
|---|---|---|---|---|---|
| 55.1. | **105 Braswell Street, Tract N** **464-00-00-012** | Fee Simple | $0.00 | Tax Appraisal | $1,457,395.00 |
| 55.2. | **Braswell St., Tract M-2** **464-00-00-029** | Fee Simple | $0.00 | Tax Appraisal | $456,262.00 |
| 55.3. | **3 Braswell St., Charleston Neck** **466-00-00-019** | Fee Simple | $0.00 | Tax Appraisal | $445,625.00 |
| 55.4. | **1961 Mildord St., Charleston Neck** **466-00-00-028** | Fee simple | $0.00 | Tax Appraisal | $317,985.00 |
| 55.5. | **Milford St., Charleston Neck Tract B,C-1** **466-00-00-029** | Fee Simple | $0.00 | Tax Appraisal | $165,255.00 |
| 55.6. | **Milford St., Charleston Neck Tract C** **466-00-00-030** | Fee Simple | $0.00 | Tax Appraisal | $339,825.00 |
| 55.7. | **Mildord St., Charleston Neck Tract D** **466-00-00-031** | Fee simple | $0.00 | Tax Appraisal | $770,960.00 |
| 55.8. | **Braswell St., Charleston Neck Tract F** **466-00-00-035** | Fee simple | $0.00 | Tax Appraisal | $194,350.00 |
| 55.9. | **Braswell St., Charleston Neck Tract I** **466-00-00-036** | Fee simple | $0.00 | Tax Appraisal | $91,885.00 |
| 55.10. | **Braswell St., Charleston Neck Parcel A** **466-00-00-049** | Fee simple | $0.00 | Tax Appraisal | $925,749.00 |

| | |
|---|---|
| 56. | **Total of Part 9.** Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88. |

$5,165,291.00

57.   **Is a depreciation schedule available for any of the property listed in Part 9?**
■ No

Debtor    **Ashley I, LLC**                                    Case number *(If known)* _____
Name

☐ Yes

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | All other assets |
|---|---|

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

Current value of
debtor's interest

71.    **Notes receivable**
Description (include name of obligor)

72.    **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

73.    **Interests in insurance policies or annuities**

74.    **Causes of action against third parties (whether or not a lawsuit
has been filed)**

75.    **Other contingent and unliquidated claims or causes of action of
every nature, including counterclaims of the debtor and rights to
set off claims**

76.    **Trusts, equitable or future interests in property**

77.    **Other property of any kind not already listed** *Examples:* Season tickets,
country club membership
**Beazer East, Inc.**
**Parcels:**
**464-00-00-012; 464-00-00-029; 466-00-00-019;**
**466-00-00-028; 466-00-00-029; 466-00-00-030;**
**466-00-00-031; 466-00-00-035; 466-00-00-036;**
**466-00-00-049**                                                              **Unknown**

78.    **Total of Part 11.**                                              | **$0.00** |
Add lines 71 through 77. Copy the total to line 90.

79.    **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
■ No
☐ Yes

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor | **Ashley I, LLC** | Case number *(If known)* | |
|--------|------------------|--------------------------|--|
| | Name | | |

**Part 12:**     Summary

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|------------------|-----------------------------------|-------------------------------|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $7,971.27 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $2,000.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ......................................................> | | $5,165,291.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $9,971.27 | + 91b.   $5,165,291.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $5,175,262.27 |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

---

**Fill in this information to identify the case:**

Debtor name    **Ashley I, LLC**

United States Bankruptcy Court for the:   DISTRICT OF SOUTH CAROLINA

Case number (if known) _____

☐ Check if this is an
amended filing

---

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

    ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

    ☑ Yes. Fill in all of the information below.

### Part 1:   List Creditors Who Have Secured Claims

**2. List in alphabetical order all creditors** who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | | Column A | Column B |
|---|---|---|---|---|
| | | | Amount of claim | Value of collateral that supports this claim |
| | | | Do not deduct the value of collateral. | |
| **2.1** | **Magnolia/ARC Lender, LLC** | Describe debtor's property that is subject to a lien | **$18,638,332.65** | **$5,165,291.00** |

Creditor's Name

c/o Branch Capital
Partners, LP
3340 Peachtree Road, Ste.
840
Atlanta, GA 30326

**Mortgage on all real estate (See Schedule A/B, Question 55).**

Creditor's mailing address

**Describe the lien**
_____

**Is the creditor an insider or related party?**

Creditor's email address, if known

☑ No
☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**

☐ No

**7/28/2004**

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

☑ No

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated
☐ Disputed

---

**3.** Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.    $18,638,332.65

### Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name __**Ashley I, LLC**__

United States Bankruptcy Court for the: __DISTRICT OF SOUTH CAROLINA__

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

| Part 1: | List All Creditors with PRIORITY Unsecured Claims |
| --- | --- |

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | Total claim | Priority amount |
| --- | --- | --- | --- |
| 2.1 | Priority creditor's name and mailing address<br>**Charleston County Treasurer<br>PO Box 100242<br>Columbia, SC 29202** | $74,104.68 | $74,104.68 |

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
_____

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Basis for the claim:
**Property taxes due on 10 properties as shown on attached tax bills.**

Is the claim subject to offset?
■ No
☐ Yes

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  |  | Amount of claim |
| --- | --- | --- |
| 3.1 | Nonpriority creditor's name and mailing address<br>**Beazer East, Inc.<br>c/o Three Rivers Management, Inc.<br>One Oxford Centre, Suite 3000<br>Pittsburgh, PA 15219** | $0.00 |

As of the petition filing date, the claim is: *Check all that apply.*
■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred ___

Last 4 digits of account number ___

Basis for the claim: __Purchaser Indemnity__
__Parcels:__
__464-00-00-012, 464-00-00-029, 466-00-00-019,__
__466-00-00-028, 466-00-00-029, 466-00-00-030,__
__466-00-00-031, 466-00-00-035, 466-00-00-036,__
__466-00-00-049__

Is the claim subject to offset? ■ No ☐ Yes

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    44132                    Best Case Bankruptcy

| Debtor | **Ashley I, LLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,812.74 |

**Boasso America Corporation**
**100 Intermodal Drive**
**Chalmette, LA 70043**

Date or dates debt was incurred ___

Last 4 digits of account number ___

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Accounts Payable 

Is the claim subject to offset? ■ No ☐ Yes

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,733.40 |

**Charleston Recycling & Disposal**
**4045 Bridgeview Drive**
**North Charleston, SC 29405**

Date or dates debt was incurred ___

Last 4 digits of account number ___

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Accounts Payable 

Is the claim subject to offset? ■ No ☐ Yes

## Part 3:    List Others to Be Notified About Unsecured Claims

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

## Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

5. Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ | 74,104.68 |
| 5b. Total claims from Part 2 | 5b. + | $ | 7,546.14 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ | 81,650.82 |

THIS TAX BILL DOES NOT REFLECT ANY TAXES YOU MIGHT OWE FOR PREVIOUS YEARS

**COMBINED TAXES FOR: CHARLESTON COUNTY-WIDE ENTITIES AND 7-2 CITY OF CHARLESTON**
**REAL PROPERTY TAXES FOR PERIOD COMMENCING: 01-01-2015**  TAX BILL DATE: 10-01-2015

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 1,457,395 | 87,440 | 267.6 | 23,398.94 |
| 7-2 | 952 | 48.32 | | | | | | |

COUNTY SALES TAX CREDIT  -1,267.93
MUNICIPAL SALES TAX CREDIT  -1,224.21

BILL NO.#: 5235259
PIN : 4640000012
DESCRIPTION -TRACT N HIGH AND MARSH
105 BRASWELL ST

**PAY THIS AMOUNT ON OR BEFORE 01-15-2016**  **$20,906.80**



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

952
R                                    4640000012

YOU CAN PAY YOUR TAXES ONLINE AT _www.charlestoncounty.org_
IMPORTANT INFORMATION ON BACK OF THIS BILL

GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 533.38 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 8,805.21 | SCHOOL BOARD OPERATING | |
| 26.0 | 2,273.44 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 375.99 | PARKS & RECREATION OPERATING | |
| 1.3 | 113.67 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 166.14 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 87.44 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 5,604.85 | CITY OF CHARLESTON | |
| 2.0 | 174.88 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 131.16 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 20,906.80 | TOTAL TAXES | 100.0% |
| | 20,906.80 | **PAY THIS AMOUNT** | |

TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT

PROPERTY DESCRIPTION    PIN : 4640000012
DESCRIPTION -TRACT N HIGH AND MARSH
105 BRASWELL ST

BILL NO.#: 5235259    TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT _www.charlestoncounty.org_

AMOUNT ▶  $20,906.80    R

IF PAYING ON OR BEFORE 01-15-2016    U.S. DOLLARS ONLY

4640000012

AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)
01-18-2016    21,534.00
02-02-2016    22,997.48
AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)
03-17-2016    24,042.82

ADDRESS _____
CHANGE _____

MAKE PAYMENT TO:

**CHARLESTON COUNTY TREASURER**
**PO BOX 100242**
**COLUMBIA SC 29202-3242**

2020150000000005235259011520160020906808

THIS TAX BILL DOES NOT REFLECT ANY TAXES YOU MIGHT OWE FOR PREVIOUS YEARS

**COMBINED TAXES FOR: CHARLESTON COUNTY-WIDE ENTITIES AND 7-2 CITY OF CHARLESTON**
**REAL PROPERTY TAXES FOR PERIOD COMMENCING: 01-01-2015**    TAX BILL DATE: 10-01-2015

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 445,625 | 26,740 | 267.6 | 7,155.62 |
| 7-2 | 952 | 5.20 | | | | | | |

BILL NO.#: 5234832
PIN : 4660000019
SUBDIVISON NAME -CHARLESTON NECK
3 BRASWELL ST

| | |
|---|---|
| COUNTY SALES TAX CREDIT | -387.69 |
| MUNICIPAL SALES TAX CREDIT | -374.33 |

| PAY THIS AMOUNT ON OR BEFORE 01-15-2016 | $6,393.60 |
|---|---|



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

952
R                          4660000019
YOU CAN PAY YOUR TAXES ONLINE AT www.charlestoncounty.org
IMPORTANT INFORMATION ON BACK OF THIS BILL

GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 163.11 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 2,692.72 | SCHOOL BOARD OPERATING | |
| 26.0 | 695.24 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 114.98 | PARKS & RECREATION OPERATING | |
| 1.3 | 34.76 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 50.81 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 26.74 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 1,714.06 | CITY OF CHARLESTON | |
| 2.0 | 53.48 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 40.11 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 6,393.60 | TOTAL TAXES | 100.0% |
| | 6,393.60 | **PAY THIS AMOUNT** | |

TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT

PROPERTY DESCRIPTION        PIN : 4660000019

SUBDIVISON NAME -CHARLESTON NECK
3 BRASWELL ST

BILL NO.#: 5234832        TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT www.charlestoncounty.org

AMOUNT ▶    $6,393.60    R

IF PAYING ON OR BEFORE 01-15-2016    U.S. DOLLARS ONLY

4660000019
AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)
01-18-2016        6,585.41
02-02-2016        7,032.96
AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)
03-17-2016        7,352.64

ADDRESS _____
CHANGE _____

MAKE PAYMENT TO:

CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202-3242

2020150000000052348320115201600063936b06

THIS TAX BILL DOES NOT REFLECT ANY TAXES YOU MIGHT OWE FOR PREVIOUS YEARS.

**COMBINED TAXES FOR: CHARLESTON COUNTY-WIDE ENTITIES AND P2 CITY OF CHARLESTON**
**REAL PROPERTY TAXES FOR PERIOD COMMENCING: 01-01-2015**   TAX BILL DATE: 10-01-2015

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 317,985 | 19,080 | 267.6 | 5,105.81 |
| 7-2 | 952 | 1.46 | | | | | | |

BILL NO.#: 5234869
PIN : 4660000028
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACTS A AND
1961 MILFORD ST

COUNTY SALES TAX CREDIT            -276.65
MUNICIPAL SALES TAX CREDIT         -267.11

| PAY THIS AMOUNT ON OR BEFORE 01-15-2016 | $4,562.05 |
|---|---|



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

952
R                            4660000028

YOU CAN PAY YOUR TAXES ONLINE AT www.charlestoncounty.org
IMPORTANT INFORMATION ON BACK OF THIS BILL

GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 116.39 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 1,921.36 | SCHOOL BOARD OPERATING | |
| 26.0 | 496.08 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 82.04 | PARKS & RECREATION OPERATING | |
| 1.3 | 24.80 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 36.25 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 19.08 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 1,223.04 | CITY OF CHARLESTON | |
| 2.0 | 38.16 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 28.62 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 4,562.05 | TOTAL TAXES | 100.0% |
| | 4,562.05 | **PAY THIS AMOUNT** | |

TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT

PROPERTY DESCRIPTION     PIN : 4660000028                4660000028

SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACTS A AND B-1 DE
1961 MILFORD ST

BILL NO.#: 5234869     TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT www.charlestoncounty.org

AMOUNT ▶   $4,562.05    R

IF PAYING ON OR BEFORE 01-15-2016    U.S. DOLLARS ONLY

AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)
01-18-2016                    4,698.91
02-02-2016                    5,018.25
AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)
03-17-2016                    5,246.35

ADDRESS _____

CHANGE _____

MAKE PAYMENT TO:

CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202-3242

20201500000000052348690115201600045620 56

THIS TAX BILL DOES NOT REFLECT ANY TAXES YOU MIGHT OWE FOR PREVIOUS YEARS

**COMBINED TAXES FOR: CHARLESTON COUNTY-WIDE ENTITIES AND 7-2 CITY OF CHARLESTON**
**REAL PROPERTY TAXES FOR PERIOD COMMENCING: 01-01-2015**    TAX BILL DATE: 10-01-2015

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 456,262 | 27,380 | 267.6 | 7,326.89 |
| 7-2 | 952 | 6.97 | | | | | | |

COUNTY SALES TAX CREDIT        -396.95
MUNICIPAL SALES TAX CREDIT      -383.26

BILL NO.#: 5235438
PIN : 4640000029
DESCRIPTION -TRACT M-2 SITE NAME -NEXT TO 81
BRASWELL ST

| PAY THIS AMOUNT ON OR BEFORE 01-15-2016 | $6,546.68 |
|---|---|

ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

952
R                                   4640000029

YOU CAN PAY YOUR TAXES ONLINE AT www.charlestoncounty.org
IMPORTANT INFORMATION ON BACK OF THIS BILL

### GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 167.02 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 2,757.17 | SCHOOL BOARD OPERATING | |
| 26.0 | 711.88 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 117.73 | PARKS & RECREATION OPERATING | |
| 1.3 | 35.59 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 52.02 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 27.38 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 1,755.12 | CITY OF CHARLESTON | |
| 2.0 | 54.76 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 41.07 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 6,546.68 | TOTAL TAXES | 100.0% |
| | 6,546.68 | **PAY THIS AMOUNT** | |

- - - - - - - - - - - - - - TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT - - - - - - - - - - - -

PROPERTY DESCRIPTION    PIN : 4640000029
DESCRIPTION -TRACT M-2 SITE NAME -NEXT TO 81
BRASWELL ST

BILL NO.#: 5235438        TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
**PAY YOUR TAXES ONLINE AT** www.charlestoncounty.org

| AMOUNT ▶ | $6,546.68 |
|---|---|

R

IF PAYING ON OR BEFORE 01-15-2016    U.S. DOLLARS ONLY

4640000029

**AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)**
01-18-2016        6,743.08
02-02-2016        7,201.35
**AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)**
03-17-2016        7,528.68

ADDRESS _____

CHANGE _____

MAKE PAYMENT TO:

**CHARLESTON COUNTY TREASURER**
PO BOX 100242
COLUMBIA SC 29202-3242

2020150000000005235438011520160006546689

THIS TAX BILL DOES NOT REFLECT ANY TAXES YOU MIGHT OWE FOR PREVIOUS YEARS

**COMBINED TAXES FOR: CHARLESTON COUNTY-WIDE ENTITIES AND 7-2 CITY OF CHARLESTON**

**REAL PROPERTY TAXES FOR PERIOD COMMENCING: 01-01-2015**        TAX BILL DATE: 10-01-2015

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 165,255 | 9,920 | 267.6 | 2,654.59 |
| 7-2 | 952 | 1.78 | | | | | | |

BILL NO.#: 5234975
PIN : 4660000029
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT B AND MILFORD ST

| | |
|---|---|
| COUNTY SALES TAX CREDIT | -143.77 |
| MUNICIPAL SALES TAX CREDIT | -138.81 |



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

| PAY THIS AMOUNT ON OR BEFORE 01-15-2016 | $2,372.01 |
|---|---|

952
R                    4660000029

YOU CAN PAY YOUR TAXES ONLINE AT www.charlestoncounty.org
IMPORTANT INFORMATION ON BACK OF THIS BILL

**GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS**

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 60.51 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 998.94 | SCHOOL BOARD OPERATING | |
| 26.0 | 257.92 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 42.66 | PARKS & RECREATION OPERATING | |
| 1.3 | 12.90 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 18.85 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 9.92 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 635.94 | CITY OF CHARLESTON | |
| 2.0 | 19.84 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 14.88 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 2,372.01 | TOTAL TAXES | 100.0% |
| | 2,372.01 | **PAY THIS AMOUNT** | |

---

TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT

PROPERTY DESCRIPTION     PIN : 4660000029

SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT B AND C-1
MILFORD ST

BILL NO.#: 5234975     TAX BILL DATE: 10-01-2015

FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT www.charlestoncounty.org

AMOUNT ▶   $2,372.01        R

IF PAYING ON OR BEFORE 01-15-2016     U.S. DOLLARS ONLY

4660000029

**AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)**
| | |
|---|---|
| 01-18-2016 | 2,443.17 |
| 02-02-2016 | 2,609.21 |

**AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)**
| | |
|---|---|
| 03-17-2016 | 2,727.81 |

ADDRESS _____
CHANGE _____

MAKE PAYMENT TO:

CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202-3242

202015000000000523497501152016000237201 9

THIS TAX BILL DOES NOT REFLECT ANY TAXES YOU MIGHT OWE FOR PREVIOUS YEARS

**COMBINED TAXES FOR: CHARLESTON COUNTY-WIDE ENTITIES AND 7-2 CITY OF CHARLESTON**
**REAL PROPERTY TAXES FOR PERIOD COMMENCING: 01-01-2015**        TAX BILL DATE: 10-01-2015

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 339,825 | 20,390 | 267.6 | 5,456.37 |
| 7-2 | 952 | 3.77 | | | | | | |

BILL NO.#: 5234908
PIN : 4660000030
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT C SITE
MILFORD ST

| | |
|---|---|
| COUNTY SALES TAX CREDIT | -295.65 |
| MUNICIPAL SALES TAX CREDIT | -285.45 |

| PAY THIS AMOUNT ON OR BEFORE 01-15-2016 | $4,875.27 |
|---|---|



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

952
R                    4660000030
YOU CAN PAY YOUR TAXES ONLINE AT *www.charlestoncounty.org*
IMPORTANT INFORMATION ON BACK OF THIS BILL

GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 124.38 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 2,053.27 | SCHOOL BOARD OPERATING | |
| 26.0 | 530.14 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 87.68 | PARKS & RECREATION OPERATING | |
| 1.3 | 26.51 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 38.74 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 20.39 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 1,307.01 | CITY OF CHARLESTON | |
| 2.0 | 40.78 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 30.59 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 4,875.27 | TOTAL TAXES | 100.0% |
| | 4,875.27 | **PAY THIS AMOUNT** | |

---

TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT

PROPERTY DESCRIPTION    PIN : 4660000030
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT C SITE NAME -
MILFORD ST

BILL NO.#: 5234908    TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT *www.charlestoncounty.org*

| AMOUNT ▶ | $4,875.27 | R |
|---|---|---|
| | U.S. DOLLARS ONLY | |

IF PAYING ON OR BEFORE 01-15-2016

4660000030

**AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)**
01-18-2016                    5,021.53
02-02-2016                    5,362.80
**AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)**
03-17-2016                    5,606.56

ADDRESS _____
CHANGE _____

MAKE PAYMENT TO:

CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202-3242

202015000000000523490801152016000487527B

Case 16-00559-dc    Doc    Filed 07/05/16    Entered 07/05/16 17:24    Desc Main

THIS TAX BILL DOES NOT REFLECT ANY TAXES YOU MIGHT OWE FOR PREVIOUS YEARS

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 770,960 | 46,260 | 267.6 | 12,379.18 |
| 7-2 | 952 | 10.00 | | | | | | |

COUNTY SALES TAX CREDIT   -670.74
MUNICIPAL SALES TAX CREDIT   -647.61

BILL NO.#: 5234686
PIN : 4660000031
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT D
MILFORD ST

PAY THIS AMOUNT ON OR BEFORE 01-15-2016   $11,060.83



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

952
R
4660000031

YOU CAN PAY YOUR TAXES ONLINE AT www.charlestoncounty.org
IMPORTANT INFORMATION ON BACK OF THIS BILL

GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 282.19 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 4,658.38 | SCHOOL BOARD OPERATING | |
| 26.0 | 1,202.76 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 198.92 | PARKS & RECREATION OPERATING | |
| 1.3 | 60.14 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 87.89 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 46.26 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 2,965.30 | CITY OF CHARLESTON | |
| 2.0 | 92.52 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 69.39 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 11,060.83 | TOTAL TAXES | 100.0% |
| | 11,060.83 | **PAY THIS AMOUNT** | |

TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT

PROPERTY DESCRIPTION    PIN : 4660000031
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT D
MILFORD ST

BILL NO.#: 5234686    TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT www.charlestoncounty.org

AMOUNT ▶  $11,060.83   R
IF PAYING ON OR BEFORE 01-15-2016   U.S. DOLLARS ONLY

4660000031

AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)
01-18-2016    11,392.65
02-02-2016    12,166.91
AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)
03-17-2016    12,719.95

ADDRESS _____
CHANGE _____

MAKE PAYMENT TO:

CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202-3242

2020150000000005234686011520160011060831

Case 16-00559-dt

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 194,350 | 11,660 | 267.6 | 3,120.22 |
| 7-2 | 952 | 2.10 | | | | | | |

COUNTY SALES TAX CREDIT  -169.08
MUNICIPAL SALES TAX CREDIT  -163.25

BILL NO.#: 5235340
PIN : 4660000035
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT F
BRASWELL ST

**PAY THIS AMOUNT ON OR BEFORE 01-15-2016     $2,787.89**



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

952
R                    4660000035

YOU CAN PAY YOUR TAXES ONLINE AT www.charlestoncounty.org
IMPORTANT INFORMATION ON BACK OF THIS BILL

### GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 71.13 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 1,174.16 | SCHOOL BOARD OPERATING | |
| 26.0 | 303.16 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 50.14 | PARKS & RECREATION OPERATING | |
| 1.3 | 15.16 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 22.15 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 11.66 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 747.40 | CITY OF CHARLESTON | |
| 2.0 | 23.32 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 17.49 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 2,787.89 | TOTAL TAXES | 100.0% |
| | 2,787.89 | **PAY THIS AMOUNT** | |

------ TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT ------

PROPERTY DESCRIPTION    PIN : 4660000035
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT F
BRASWELL ST

BILL NO.#: 5235340    TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT www.charlestoncounty.org

AMOUNT ▶  $2,787.89   R

IF PAYING ON OR BEFORE 01-15-2016   U.S. DOLLARS ONLY

4660000035

**AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)**
01-18-2016    2,871.53
02-02-2016    3,066.68
**AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)**
03-17-2016    3,206.07

ADDRESS _____
CHANGE  _____

MAKE PAYMENT TO:

**CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202-3242**

20201500000000052353400115201600027878 99

Case 16-00559 - dt-1.00 Doc 01-02/08/16 Entered 02/08/16 10:44:34 Desc Main

**COMBINED TAXES FOR: CHARLESTON COUNTY-WIDE ENTITIES AND 7-2 CITY OF CHARLESTON**
**REAL PROPERTY TAXES FOR PERIOD COMMENCING: 01-01-2015** TAX BILL DATE: 10-01-2015

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 91,885 | 5,510 | 267.6 | 1,474.48 |
| 7-2 | 952 | 1.00 | | | | | | |

BILL NO.#: 5234659
PIN : 4660000036
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT I
BRASWELL ST

| | |
|---|---|
| COUNTY SALES TAX CREDIT | -79.94 |
| MUNICIPAL SALES TAX CREDIT | -77.18 |

| PAY THIS AMOUNT ON OR BEFORE 01-15-2016 | $1,317.36 |
|---|---|



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

952
R                  4660000036
YOU CAN PAY YOUR TAXES ONLINE AT _www.charlestoncounty.org_
IMPORTANT INFORMATION ON BACK OF THIS BILL

### GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 33.61 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 554.86 | SCHOOL BOARD OPERATING | |
| 26.0 | 143.26 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 23.69 | PARKS & RECREATION OPERATING | |
| 1.3 | 7.16 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 10.47 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 5.51 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 353.15 | CITY OF CHARLESTON | |
| 2.0 | 11.02 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 8.27 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 1,317.36 | TOTAL TAXES | 100.0% |
| | 1,317.36 | **PAY THIS AMOUNT** | |

- - - - - - - - - - - - - - TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT - - - - - - - - - - - - - -

PROPERTY DESCRIPTION     PIN : 4660000036

SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -TRACT I
BRASWELL ST

BILL NO.#: 5234659     TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT _www.charlestoncounty.org_

AMOUNT ▶  $1,317.36     R

IF PAYING ON OR BEFORE 01-15-2016     U.S. DOLLARS ONLY

4660000036

**AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)**
| 01-18-2016 | 1,356.88 |
| 02-02-2016 | 1,449.10 |

**AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)**
| 03-17-2016 | 1,514.97 |

ADDRESS _____
CHANGE _____

MAKE PAYMENT TO:

CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202-3242

2020150000000005234659011520160001317368

THIS TAX BILL DOES NOT REFLECT ANY TAXES YOU MIGHT OWE FOR PREVIOUS YEARS

**COMBINED TAXES FOR: CHARLESTON COUNTY-WIDE ENTITIES AND 7-2 CITY OF CHARLESTON**
**REAL PROPERTY TAXES FOR PERIOD COMMENCING: 01-01-2015**

TAX BILL DATE: 10-01-2015

| PROPERTY DESCRIPTION | | | | ASSESSMENT RATIO | APPRAISAL | ASSESSMENT | MILLAGE | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| DIST | TYPE | ACRES | MORTGAGE CODE/ID | OT6 | 925,749 | 55,550 | 267.6 | 14,865.22 |
| 7-2 | 500 | 4.27 | | | | | | |

COUNTY SALES TAX CREDIT    -805.40
MUNICIPAL SALES TAX CREDIT    -777.63

BILL NO.#: 5234932
PIN : 4660000049
SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -PARCEL A SIT
BRASWELL ST

| PAY THIS AMOUNT ON OR BEFORE 01-15-2016 | $13,282.19 |
|---|---|



ASHLEY I LLC
111 E HARGETT ST STE 300
RALEIGH NC 27601-1482

500
R                    4660000049

YOU CAN PAY YOUR TAXES ONLINE AT www.charlestoncounty.org
IMPORTANT INFORMATION ON BACK OF THIS BILL

## GOVERNMENT AGENCIES RESPONSIBLE FOR MILLAGE & TAX DOLLARS

| MILLS | TAXES | AGENCY CODE | % |
|---|---|---|---|
| 6.1 | 338.86 | COUNTY GOVERNMENT BONDS (958-4640) | 15.2% |
| 100.7 | 5,593.89 | SCHOOL BOARD OPERATING | |
| 26.0 | 1,444.30 | SCHOOL BOARD BONDS (566-1829) | 53.0% |
| 4.3 | 238.87 | PARKS & RECREATION OPERATING | |
| 1.3 | 72.22 | PARKS & RECREATION BONDS (762-2172) | 2.3% |
| 1.9 | 105.55 | TRIDENT TECHNICAL COLLEGE OPERATING | |
| 1.0 | 55.55 | TRIDENT TECHNICAL COLLEGE BONDS (574-6111) | 1.2% |
| 78.1 | 3,560.83 | CITY OF CHARLESTON | |
| 2.0 | 111.10 | CITY OF CHARLESTON DRAINAGE IMP (579-7529) | |
| 1.5 | 83.33 | CITY OF CHARLESTON PUBLIC SAFTEY INFRASTRUCTURE | 28.3% |
| 267.6 | 13,282.19 | TOTAL TAXES | 100.0% |
| | 13,282.19 | **PAY THIS AMOUNT** | |

- - - - - - - - - - TEAR AT PERFORATION AND RETURN BOTTOM PORTION WITH PAYMENT - - - - - - - - - -

PROPERTY DESCRIPTION       PIN : 4660000049

SUBDIVISON NAME -CHARLESTON NECK DESCRIPTION -PARCEL A SITE NAME
BRASWELL ST

BILL NO.#: 5234932       TAX BILL DATE: 10-01-2015
FOR PERIOD COMMENCING: 01-01-2015
PAY YOUR TAXES ONLINE AT www.charlestoncounty.org

**AMOUNT ▶**   | $13,282.19 |   R
                  U.S. DOLLARS ONLY

IF PAYING ON OR BEFORE 01-15-2016

4660000049

**AMOUNT DUE ON OR AFTER (PAYMENT TO COUNTY TREASURER)**
01-18-2016                    13,680.66
02-02-2016                    14,610.41
**AMOUNT DUE ON OR AFTER (PAYMENT TO DELINQUENT TAX)**
03-17-2016                    15,274.52

ADDRESS _____
CHANGE _____

MAKE PAYMENT TO:

CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202-3242

2020150000000005234932011520160013282196

**Fill in this information to identify the case:**

Debtor name    **Ashley I, LLC**

United States Bankruptcy Court for the:    DISTRICT OF SOUTH CAROLINA

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                 12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal     Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1.** State what the contract or lease is for and the nature of the debtor's interest | **Cooperation Agreement** |
| State the term remaining | |
| List the contract number of any government contract | **Ashley River Investors, LLC** <br> **180 Westvaco Road** <br> **Summerville, SC 29483** |
| **2.2.** State what the contract or lease is for and the nature of the debtor's interest | **Lease Agreement** <br> **Lease of cell tower** <br> **$1,270/monthly** |
| State the term remaining | **15 years** |
| List the contract number of any government contract | **Kirkman Broadcasting, Inc.** <br> **60 Markfield Drive, Unit 4** <br> **Charleston, SC 29407** |
| **2.3.** State what the contract or lease is for and the nature of the debtor's interest | **Support Agreement** |
| State the term remaining | |
| List the contract number of any government contract | **Magnolia/ARC Lender, LLC** <br> **c/o Branch Capital Partners, L.P.** <br> **3340 Peachtree Road, Ste. 840** <br> **Atlanta, GA 30326** |
| **2.4.** State what the contract or lease is for and the nature of the debtor's interest | **Cooperation Agreement** |
| State the term remaining | |
| List the contract number of any government contract | **Magnolia/ARC Lender, LLC** <br> **c/o Branch Capital Partners, LP** <br> **3340 Peachtree Road, Ste. 840** <br> **Atlanta, GA 30326** |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                                              Best Case Bankruptcy

| Debtor 1 | **Ashley I, LLC** | | | Case number *(if known)* | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.5. | State what the contract or lease is for and the nature of the debtor's interest | **Management Agreement** | |
|---|---|---|---|
| | State the term remaining | | **Prodel, LLC** |
| | List the contract number of any government contract | | **9804 Koupela Drive** |
| | | | **Raleigh, NC 27614** |

| 2.6. | State what the contract or lease is for and the nature of the debtor's interest | **Consent Agreement "Beazer Site", Charleston County, Charleston, SC** | |
|---|---|---|---|
| | State the term remaining | | **SC DHEC** |
| | List the contract number of any government contract | | **2600 Bull Street** |
| | | | **Columbia, SC 29201** |

**Fill in this information to identify the case:**

Debtor name __**Ashley I, LLC**__

United States Bankruptcy Court for the: __DISTRICT OF SOUTH CAROLINA__

Case number (if known) _____

☐ Check if this is an
  amended filing

Official Form 206H
# Schedule H: Your Codebtors
12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the
Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of
creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule
on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 **Ashley II of Charleston, LLC** | **111 E. Hargett Street, Ste. 300 Raleigh, NC 27601** | **Magnolia/ARC Lender, LLC** | ☑ D ___2.1___ ☐ E/F _____ ☐ G _____ |

**Fill in this information to identify the case:**

Debtor name    **Ashley I, LLC**

United States Bankruptcy Court for the:    DISTRICT OF SOUTH CAROLINA

Case number (if known)   _____

☐ Check if this is an amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    12/15

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:   Income**

1. **Gross revenue from business**

   ☐ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue Check all that apply | Gross revenue (before deductions and exclusions) |
   |---|---|---|
   | **From the beginning of the fiscal year to filing date:** From **1/01/2016** to **Filing Date** | ☐ Operating a business<br>■ Other   **Rental Revenue** | $5,240.00 |
   | **For prior year:** From **1/01/2015** to **12/31/2015** | ☐ Operating a business<br>■ Other   **Rental Revenue** | $13,080.00 |
   | **For year before that:** From **1/01/2014** to **12/31/2014** | ☐ Operating a business<br>■ Other   **Rental Revenue** | $13,080.00 |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

   | | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
   |---|---|---|

**Part 2:   List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,225. (This amount may be adjusted on 4/01/16 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☐ None.

   | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer Check all that apply |
   |---|---|---|---|

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor    **Ashley I, LLC**                                                  Case number *(if known)* _____

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.1. | **Paracorp, Inc.**<br>**PO Box 160568**<br>**Sacramento, CA 95816** | **11/13/2015** | **$100.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.2. | **GEL Laboratories, LLC**<br>**PO Box 30712**<br>**Charleston, SC 29417** | | **$1,150.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.3. | **EnviroSmart**<br>**PO Box 20666**<br>**Charleston, SC 29413** | | **$4,995.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,225. (This amount may be adjusted on 4/01/16 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ■ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

   ■ None

| Creditor's name and address | Description of the action creditor took | Date action was<br>taken | Amount |
|---|---|---|---|

**Part 3:**    Legal Actions or Assignments

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case**.**

Debtor    **Ashley I, LLC**                                                  Case number *(if known)* _____

■ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

**8. Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

| Part 5: | Certain Losses |
|---|---|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None.

| Description of the property lost and how the loss occurred | Amount of payments received for the loss If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

| Part 6: | Certain Payments or Transfers |
|---|---|

**11. Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **McCarthy Law Firm, LLC PO Box 11332 Columbia, SC 29211-1332** | | **January 11, 2016 -** $16,666.67 **February 3, 2016 -** $30,873.76 | **$75,000.00** |
| | **Email or website address www.mccarthy-lawfirm.com** | | | |
| | **Who made the payment, if not debtor? Ashley II of Charleston, LLC** | | | |

Debtor    **Ashley I, LLC**

Case number *(if known)* _____

| | Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.2. | **Marty P. Ouzts, CPA**<br>**Outzs, Ouzts & Varn**<br>**PO Box 25448**<br>**Columbia, SC 29224** | | **January 11, 2016** | **$8,333.33** |
| | Email or website address<br>**www.oovcpa.com** | | | |
| | Who made the payment, if not debtor?<br>**Ashley II of Charleston, LLC** | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer?<br>Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:    Previous Locations**

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy<br>From-To |
|---|---|

**Part 8:    Health Care Bankruptcies**

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

**Part 9:    Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

Debtor    **Ashley I, LLC**                                                          Case number *(if known)* _____

☑ No.

☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

☐ Yes. Does the debtor serve as plan administrator?

**Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

**Part 12:   Details About Environment Information**

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly

| Debtor | **Ashley I, LLC** | Case number *(if known)* | |

harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

    ☐ No.
    ■ Yes. Provide details below.

| Case title<br>Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| **Ashley I, LLC was not a party to the action, but the UAO attached as Exhibit SOFA 22 was previously issued for the property now owned by Ashley I, LLC** | | | ☐ Pending<br>☐ On appeal<br>☐ Concluded |

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

    ■ No.
    ☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

    ☐ No.
    ■ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| **Pursuant to the UAO attached as Exhibit SOFA 22, Ashley I, LLC has no direct reporting requirements** | | | |

---

**Part 13:**   **Details About the Debtor's Business or Connections to Any Business**

25. **Other businesses in which the debtor has or has had an interest**
    List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
    Include this information even if already listed in the Schedules.

    ■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

26. **Books, records, and financial statements**
    26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
    ☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26a.1. **Cherokee Investment Services, Inc.**<br>**111 E. Hargett Street, Ste. 300**<br>**Raleigh, NC 27601** | **10/2007 - current** |

    26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement
    within 2 years before filing this case.

---



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 4
ATLANTA FEDERAL CENTER
61 FORSYTH STREET
ATLANTA, GEORGIA 30303-8960

Cc. Babs Warner
(cy UAO)

January 20, 1999

4EAD

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Michael Slenska
Environmental Group
Beazer East Inc.
1 Oxford Center, Suite 3000
Pittsburgh, PA 15219

SUBJ:    Issuance of Unilateral Administrative Order for RD/RA at the Koppers
(Charleston Property) Superfund Site, Charleston, Charleston County, South
Carolina.

Dear Mr. Slenska:

The purpose of this letter is to transmit the enclosed Unilateral Administrative Order
(Order) to Beazer East Inc. regarding the Koppers (Charleston Plant) Superfund Site (the Site).
This Order is issued pursuant to the authority of the United States Environmental Protection
Agency (EPA) under Section 106(a) of the Comprehensive Environmental Response,
Compensation, and Liability Act of 1980, (CERCLA), 42 U.S.C. § 9606(a), as amended.

As you have been previously notified, EPA has information indicating that Beazer East
Inc. is a potentially responsible party under Section 107 of CERCLA, 42 U.S.C. § 9607, with
respect to the Site.

The enclosed Order directs Beazer East Inc. to perform the Remedial Design and
Remedial Action (RD/RA) described in the Record of Decision (ROD) dated April 29, 1998. The
ROD is incorporated by reference in the Order.

Please review the Order carefully, paying particular attention to Sections XXX, XXVIII,
and XXIX, of the Order which address the obligations of the Respondents to give notice of their

- 2 -

intent to comply, the effective date of the Order and the right of the Respondents to request a conference to discuss the terms of the Order. For deadlines of thirty days or less, consider the effective date of this Order to be January 25, 1999. Please let me know if you will need extensions for other deadlines. I have not enclosed the ROD, Work Plan or Site map with the Order. Let me know if you need copies.

If you have any technical questions relating to the enclosed Order, please contact the Remedial Project Manager for the Site, Mr. Craig Zeller at (404) 562-8827. If you have any legal questions concerning this Order, please contact Mr. Kevin Beswick, Assistant Regional Counsel, at (404) 562-9580.

Sincerely,

Kevin Beswick

cc: Monica Gambino, Babst Calland
Craig Zeller, RPM

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
UNILATERAL ADMINISTRATIVE ORDER
REMEDIAL DESIGN AND REMEDIAL ACTION
KOPPERS CO., INC. (CHARLESTON PLANT) NPL SITE
CHARLESTON, CHARLESTON COUNTY, SOUTH CAROLINA

# TABLE OF CONTENTS

I. INTRODUCTION AND JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. FINDINGS OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V. CONCLUSIONS OF LAW AND DETERMINATIONS . . . . . . . . . . . . . . . . . . . . . . 8

VI. NOTICE TO THE STATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VIII. WORK TO BE PERFORMED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IX. CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

X. EPA PERIODIC REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

XI. ADDITIONAL RESPONSE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

XII. ENDANGERMENT AND EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . 13

XIII. EPA REVIEW OF SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XIV. PROGRESS REPORTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XV. QUALITY ASSURANCE SAMPLING AND DATA ANALYSIS . . . . . . . . . . . . . . . . 15

XVI. COMPLIANCE WITH APPLICABLE LAWS . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

XVII. PROJECT COORDINATOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

XVIII. SITE ACCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XIX. ACCESS TO SITE NOT OWNED BY RESPONDENTS . . . . . . . . . . . . . . . . . . . 18

XX. ACCESS TO INFORMATION AND DATA/DOCUMENT AVAILABILITY . . . . . . . . . 19

XXI. RECORD PRESERVATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
Region 4

In The Matter Of

KOPPERS CO., INC
(CHARLESTON PLANT)
NPL SITE


Beazer East, Inc.


Respondent.

Proceeding Under Section,
106(a) of the Comprehensive
Environmental Response,
Compensation, and Liability Act of 1980,
as amended by the Superfund Amendments
and Reauthorization Act of 1986
42 U.S.C. Section 9606(a)

U.S. EPA Docket No: *99-07-C*

## UNILATERAL ADMINISTRATIVE ORDER
## FOR REMEDIAL DESIGN AND REMEDIAL ACTION

### I.  INTRODUCTION AND JURISDICTION

A.  This Unilateral Administrative Order For Remedial Design and Remedial Action (the "Order") directs Respondent to develop the Remedial Design ("RD") for the remedy described in the Record of Decision (ROD), dated April 29, 1998, for the Koppers Co., Inc. (Charleston Plant) NPL Site, and to implement the Remedial Design by performing the Remedial Action ("RA"), Operation and Maintenance, and Performance Monitoring.  This Order is issued to Respondent by the United States Environmental Protection Agency ("EPA") under the authority vested in the President of the United States by Section 106(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9606(a).  This authority was delegated to the Administrator of EPA on January 23, 1987, by Executive Order 12580 (52 Fed. Reg. 2926, January 29, 1987), and was further delegated to EPA Regional Administrators on September 13, 1987, by EPA Delegation No 14-14-B and redelegated to the Director, Waste Management Division on January 5, 1989, by Regional Delegation No. 14-14-B.

### II.  PARTIES BOUND

A.  This Order applies to and shall be binding upon Respondent, its directors, officers, employees, agents, successors, and assigns.  Respondent is responsible for carrying out all activities required by this Order.  No change in the ownership, corporate status, or other control

2

of Respondent shall alter its responsibilities under this Order.

B. Respondent shall provide a copy of this Order to any prospective owners or successors before a controlling interest in Respondent's property rights, stock, or assets are transferred. Respondent shall provide a copy of this Order to all contractors, subcontractors, laboratories, and consultants retained to perform any Work under this Order within five (5) days after the effective date of this Order, or on the date such services are retained, whichever date occurs later. Respondent shall also provide a copy of this Order to each person representing Respondent with respect to the Site or the Work and shall condition all contracts and subcontracts entered into hereunder upon performance of the Work in conformity with the terms of this Order. Notwithstanding the terms of any contract, Respondent is responsible for ensuring that its contractors and subcontractors and agents perform the Work contemplated herein in accordance with this Order.

C. With regard to the activities undertaken pursuant to this Order, each contractor and subcontractor and agent shall be deemed to be related by contract to the Respondent within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

D. Respondent shall, within fifteen (15) days after the effective date of this Order or within fifteen (15) days after acquiring title to property at the Site directly involved in the Remedial Action, record a copy or copies of this Order in the appropriate office where land ownership and transfer records are filed or recorded, and shall ensure that the recording of this Order is indexed to the titles of each and every property at the Site owned by Respondent and directly involved in the Remedial Action so as to provide notice to third parties of the issuance and terms of this Order with respect to those properties. Respondent shall, within fifteen (15) days after the effective date of this Order or within fifteen (15) days after acquiring title to such property, send notice of such recording and indexing to EPA.

E. Not later than thirty (30) days prior to any transfer of any real property interest in any property included within the Site, Respondent shall submit a true and correct copy of the transfer document to EPA, and shall identify the transferee by name, principle business address and effective date of the transfer.

### III. DEFINITIONS

Unless noted to the contrary, the terms of this Order shall have the meaning assigned to those terms pursuant to CERCLA or any regulation promulgated under CERCLA. Whenever the terms listed below are used in this Order and Appendices attached hereto, the following definitions shall apply:

A. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 et seq.

B. "Day" shall mean a calendar day unless expressly stated to be a working day. "Working

3

"day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Order, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the end of the next working day.

   C. "EPA" shall mean the United States Environmental Protection Agency.

   D. "Hazardous Substance" shall mean any substance meeting the definition provided in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

   E. "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, including any amendments thereto.

   F. "Operation and Maintenance" or "O&M" shall mean all operation and maintenance activities required by the ROD, and the Remedial Design Report, Specifications and Drawings developed by Respondent and approved by EPA pursuant to this Order, including any additional activities required by Sections X (EPA Periodic Review), XI (Additional Response Actions), XII (Endangerment and Emergency Response), and XIII (EPA Review of Submissions).

   G. "Paragraph" shall mean a portion of this Order identified by a capital letter.

   H. "Parties" shall mean the United States of America and Respondent.

   I. "Performance Monitoring" shall mean all performance monitoring activities required by the ROD and the Remedial Design Report, Specifications and Drawings developed by Respondent and approved by EPA, including any additional activities required by Sections X (EPA Periodic Review), XI (Additional Response Actions), XII (Endangerment and Emergency Response), and XIII (EPA Review of Submissions), to ensure the effectiveness of the implemented remedy and to confirm over time that all Performance Standards are met.

   J. "Performance Standards" shall mean those cleanup levels, treatment standards, standards of control, and other substantive requirements, criteria or limitations, identified in the Rod, and, except for cleanup levels and treatment standards, those identified by EPA during the Remedial Design that the Remedial Action and all other Work required by this Order must attain and maintain.

   K. "Pollutant or Contaminant" shall mean any substance defined in Section 101(33) of CERCLA, 42 U.S.C. § 9601(33).

   L. "Record of Decision" or "ROD" shall mean the EPA Record of Decision for the Koppers Site which was signed on April 29, 1998, by the Director of the Waste Management Division, EPA Region 4, including all attachments thereto. The ROD is attached hereto as Appendix 1 and is incorporated herein by reference.

4

M. "Remedial Action" or "RA" shall mean those activities, except for Operation and Maintenance, to be undertaken by Respondent to implement the final plans and specifications submitted by Respondent pursuant to the Remedial Design Report approved by EPA, including any additional activities required by Sections X (EPA Periodic Review), XI (Additional Response Actions), XII (Endangerment and Emergency Response), and XIII (EPA Review of Submissions).

N. "Remedial Design" or "RD" shall mean all studies, investigations or surveys conducted, and plans and specifications prepared, that are necessary to implement the Remedial Action, Operation and Maintenance, and Performance Monitoring activities required by the ROD and the EPA approved Remedial Design Report, Specifications, and Drawings, including any additional activities required by Sections X (EPA Periodic Review), XI (Additional Response Actions), XII (Endangerment and Emergency Response), and XIII (EPA Review of Submissions).

O. "Respondent" shall mean Beazer East, Inc.

P. "Section" shall mean a portion of this Order identified by a roman numeral.

Q. "Site" shall mean the Koppers Co., Inc. (Charleston Plant) NPL Site, encompassing approximately 102 acres, located south of Milford Street between King Street and the Ashley River, in Charleston, Charleston County, South Carolina, as generally depicted on the map attached hereto as Appendix 2. Notwithstanding the Site boundaries depicted on Appendix 2, the Site includes the areal extent of hazardous substances contamination, and all areas in close proximity to the contamination that are necessary for implementation of the Work.

R. "State" shall mean the State of South Carolina as represented by the South Carolina Department of Health and Environmental Control (SCDHEC).

S. "United States" shall mean the United States of America, including the Department of Justice and EPA.

T. "Work" shall mean all activities Respondent is required to perform under this Order, including Remedial Design, Remedial Action, Operation and Maintenance, Performance Monitoring, and any schedules or plans required to be submitted pursuant thereto.

## IV. FINDINGS OF FACT

A. The Koppers Company, ("Koppers"), Inc. (Charleston Plant) NPL Site ("the Site") is located in the Charleston Heights section of Charleston, Charleston County, South Carolina. The Site covers approximately 102 acres of land in an area mixed with commercial and industrial development. Koppers' name was changed to Beazer East, Inc. ("Beazer") in 1990. Koppers operated a wood treating facility from 1940 to 1977 on an approximate 45 acre parcel of the Site generally bounded to the north by Milford Street, to the south by Braswell Street, to the east by Interstate 26 and to the west by the Ashley River. In addition, Koppers leased a 4 acre tract south of Braswell Street from 1953 to 1968 for the stated purpose of depositing sawdust, bark, and

5

other wood waste materials resulting from stripping operations. Beazer East, Inc., is a successor in interest to the relevant assets and liabilities of Koppers Company, Inc. by merger.

   B.  Koppers' operations consisted primarily of treating raw lumber and utility poles with creosote, pentachlorophenol ("penta"), and chromated copper arsenate (CCA). The majority of wood treating operations were conducted in the eastern portion of the Site which contained numerous above ground storage tanks, working tanks, and treatment cylinders. Once the virgin lumber was sized, seasoned or otherwise made ready for treatment, the wood was pressure treated with either creosote, penta, or CCA. Wastewater containing oils, creosote and other solids generated during the treatment process was recovered in a sump pit and pumped to a series of separation tanks. Water from the separation tanks was discharged to a surface drainage ditch, now known as the South Braswell Street Drainage Ditch, which flowed westward to the Ashley River. Historical aerial photographs and Remedial Investigation sampling conducted pursuant to an Administrative Order on Consent (Docket No. 93-02-C) indicate that creosote constituents were transported with wastewater and surface water run-off along the South Braswell Street Drainage Ditch and into an impoundment area. After the mid-1960's, wastewater from the separation tanks was discharged to the publicly owned treatment works (POTW). Sludge material consisting of sand, wood chips, wood resins, and creosote, accumulated in the bottom of the treating cylinders. The sludge material was removed from the cylinders, and until the middle 1960's was used as fill material in the northwest portion of the Site.

   C.  Koppers sold the 45 acre parcel to Braswell Shipyards Inc. in 1978. Braswell later leased and/or sold various portions of the 45 acre parcel to commercial interests. Since 1978, the former Koppers property has been used by several industries. The former creosote storage tanks were used by FedServ Industries to store waste oil. Investigations conducted by the South Carolina Department of Health and Environmental Control (SCDHEC) and EPA revealed spilled waste oil on the ground immediately surrounding the six storage tanks. In 1985, cleanup and removal activities were undertaken under an EPA Administrative Order on Consent by FedServ Industries, Conservoil Inc., Low Country Petroleum Products Inc., (d/b/a as AAA Waste Oil), Fleet Transport Inc., Koppers Co. Inc., Mr Joe Giraldo, and the Estate of Gerald Luckow, which included proper disposal of material in the tanks, dismantling of the tanks, and excavation and disposal of soils.

   D.  From 1978 to 1982, Pepper Industries used the former working tanks to store waste oil, ship bilge and tank waste. In August of 1983, Peppers began the dismantling of the former working tanks, but declared bankruptcy prior to completion. Braswell Shipyards finished the tank removal in 1987, and Koppers financed one half the cost.

   E.  The 57 acre tract of land south and adjacent to the former Koppers property was used by a series of owners including American Agricultural Chemical Company (Agrico) and Conoco, Inc., to produce phosphate fertilizer and sulphuric acid from the 1880's until the 1970's. In 1982, Braswell purchased this tract of land and then leased and/or sold portions of that property to commercial interests, including Southern Dredging. In November of 1984, Southern Dredging dredged a barge canal on one of the parcels, near the 4 acre parcel that Koppers had leased for

6

wood disposal. As a result of the dredging, South Carolina regulatory personnel responded to the presence of exposed creosoted poles, highly turbid water, and an oily sheen on the Ashley River adjacent to the canal. This 57 acre parcel, along with the former Koppers property, comprises the 102 acres of the Site.

F. Koppers Company was the owner and operator of a portion of the Site during the time when constituents were released from its operation of a wood treating plant on its property Beazer has repurchased portions of its former property and additional parcels at the Site.

G. In 1988, EPA conducted a Site Inspection to gather the necessary information required to prepare the Hazard Ranking System (HRS) package. Based on the results of this investigation, the Koppers Co., Inc. (Charleston Plant) Site was proposed for inclusion on the National Priorities List (NPL) in February 1992 The Site became final on the NPL in December 1994

H In January of 1993, respondent began a Remedial Investigation/Feasibility Study (RI/FS) pursuant to an Administrative Order on Consent (Docket No. 93-02-C) The Remedial Investigation ("RI") Report was accepted as Final by EPA in January 1995

I During the multi-phased RI, non-aqueous phase liquid (NAPL) containing creosote constituents was observed in the subsurface underlying the Former Treatment Area. The subsurface of the Former Treatment Area contains potentially recoverable quantities of NAPL and is considered a definite source area of contaminants detected in the sediments and surface waters of the Milford Street Drainage Ditch, the Hagood Avenue Drainage Ditch and the headwaters of the North Tidal Marsh. NAPL has been observed in the Hagood Avenue Drainage Ditch which feeds the North Tidal Marsh. NAPL is introduced into this system via discharge from the Former Treatment Area (source area) into the eastern end of the Milford Street Drainage Ditch. NAPL and other contaminants are then transported via a subsurface drainage system which runs approximately parallel to I-26 then empties into the Hagood Avenue Drainage Ditch.

J. Potential carcinogenic and non-carcinogenic risks posed by human exposure to surface waters and sediments of the Milford Street and Hagood Avenue Drainage Ditches were quantified in EPA's Final Human Health Baseline Risk Assessment (January 1995). A future on-site worker exposure scenario was developed and evaluated for potential risks posed by dermal contact and incidental ingestion of surface waters and sediments of the Milford Street Drainage Ditch. A current off-site resident exposure scenario was developed and evaluated for potential risks posed by dermal contact and incidental ingestion of surface waters and sediments of the Hagood Avenue Drainage Ditch. The potential resultant carcinogenic risks for the future on-site worker and current off-site resident are not within EPA's protective risk range for adequate protection of human health. Furthermore, potential child exposure to surface waters and sediments of the Hagood Avenue Drainage Ditch resulted in unacceptable non-carcinogenic risks. The primary contaminants of concern in the surface water and sediments of the Milford Street and Hagood Avenue Drainage Ditches contributing to the potential unacceptable risks are polynuclear aromatic hydrocarbons (PAHs which are components of creosote-based wood preservatives), dioxin (which is a trace contaminant found in technical grade penta), and arsenic. Arsenic is

classified by EPA as Group A (known human carcinogen), while a subset of the above PAHs and the 2,3,7,8-TCDD congener of dioxin are classified as Group B (probable human carcinogen).

K. All of the substances named above are designated as hazardous substances in Title 40, Section 302 of the Code of Federal Regulations.

L. In an April 29, 1994 letter addressed to Mr. Craig Zeller (EPA Region 4 Remedial Project Manager), Ms. Shannon Craig (Environmental Group Program Manager for Beazer East, Inc.), recommended that Remedial Measures be considered in the area of the Milford Street Drainage Ditch "to reduce the potential release of site-related constituents to this drainage ditch and thereby reduce the potential risk to human health and the environment due to this source." EPA, and Beazer East, Inc., in close consultation with SCDHEC, agreed that implementation of an Interim Remedial Action (IRA) via an Order, rather than by Consent Decree, was the most expeditious way to protect human health and the environment in the short-term, while a final long-term remedial solution for the Site was being developed. The parties' mutual desire to expedite the Work was the sole reason for utilizing an Order in lieu of a Consent Decree.

M. The general objectives of EPA's Interim Remedial Action were: 1) Eliminate off-site migration of NAPL from the Former Treatment Area to the eastern end of the Milford Street Drainage Ditch; 2) Expedite remediation of a potential human health risk due to exposure to sediments and surface waters of the Milford Street and Hagood Avenue Drainage Ditches; 3) Mitigate the existing drainage system as a conduit for potential NAPL and constituent migration to the Hagood Avenue Drainage Ditch and North Tidal Marsh; 4) Mitigate off-site migration of NAPL in the intermediate water-bearing zone underlying the Former Treatment Area; and 5) Provide operational and implementation data needed to optimize a cost-effective site-wide remediation.

N. In a January 11, 1995 letter addressed to Ms. Shannon Craig (Environmental Group Program Manager for Beazer East, Inc.), Mr. Craig Zeller (EPA Region 4 Remedial Project Manager) directed Beazer East, Inc. to conduct additional investigatory work on the 57 acre tract of land formerly owned by Agrico and Conoco. This work was performed under the additional work provisions of the Administrative Order on Consent (Docket No. 93-02-C) and was conducted to fully delineate the source of lead and arsenic contamination detected in the surface waters and sediments of the South Tidal Marsh. This work was conducted in March 1995.

O. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the RI and of the proposed plan for Remedial Action on January 19, 1995 in "The Post And Courier" a major local newspaper of general circulation, and provided opportunity for public comment on the proposed remedial action.

P. The decision by EPA on the Remedial Action to be implemented at the Site is embodied in a Record of Decision ("ROD"), executed on April 29, 1998, to which the State of South Carolina has not given its concurrence. The ROD includes a responsiveness summary to public comments received. The ROD is supported by an administrative record that contains the

8

documents and information upon which EPA based the selection of the response action. The administrative record is available for public review at EPA's regional office in Atlanta, Georgia and at the Charleston County Main Library, 404 King St., Charleston, SC 29402.

## V. CONCLUSIONS OF LAW AND DETERMINATIONS

A. The Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

B. Respondent Beazer East, Inc., is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

C. The Respondent Beazer East, Inc., is a "liable party" as defined in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

D. The contaminants found at the Site are "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

E. These hazardous substances are being released from the Site into the soil, sediments, groundwater, and surface water at and/or from the Site.

F. The past disposal and migration of hazardous substances at and/or from the Site are a "release" as defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

G. The potential for future migration of hazardous substances at and/or from the Site poses a threat of a "release" as defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

H. The release of one or more hazardous substances at the Site may present an imminent and substantial endangerment to the public health or welfare or the environment.

I. The actions required by this Order are necessary to protect the public health, welfare, and the environment.

## VI. NOTICE TO THE STATE

A. On October 23, 1998, prior to issuing this Order, EPA notified the State of South Carolina, Department of Health and Environmental Control, that EPA would be issuing this Order.

## VII. ORDER

Based on the foregoing, Respondent is hereby ordered to comply with this Order, including but not limited to all Appendices to this Order, all documents incorporated by reference into or to be developed pursuant to this Order, and all schedules and deadlines in this Order, attached to this Order, incorporated by reference into this Order, or to be developed pursuant to this Order.

9

## VIII. WORK TO BE PERFORMED

A. Appendix 1 to this Order is the ROD which sets forth the Performance Standards that must be achieved by Respondent to implement the Work at the Site. The ROD is incorporated into this Order by reference as if fully set forth herein and is therefore both a requirement and an enforceable part of this Order.

B. Respondent shall cooperate with EPA in providing information regarding the Work to the public. As requested by EPA, Respondent shall participate in the preparation of such information for distribution to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

C. All aspects of the Work to be performed by Respondent pursuant to this Order shall be under the direction and supervision of a qualified contractor ("Supervising Contractor") who shall be a qualified professional engineer or geologist with expertise in hazardous waste cleanups, the selection of which shall be subject to disapproval by EPA. Within five (5) days after the effective date of this Order, Respondent shall submit to EPA in writing the name, title, and qualifications of any contractor proposed to be the Supervising Contractor, including primary support entities and staff. EPA will issue a notice of disapproval or an authorization to proceed.

D. If EPA disapproves a proposed Supervising Contractor, Respondent shall submit to EPA within fifteen (15) calendar days after receipt of EPA's disapproval of the Supervising Contractor previously proposed, a list of contractors, including primary support entities and staff, that would be acceptable to Respondent. EPA shall, after receipt of the list, provide written notice of the names of the contractors it disapproves and an authorization to proceed with respect to any of the other contractors. Respondent may select any contractor from that list that is not disapproved and shall notify EPA of the name of the Supervising Contractor selected within ten (10) days of EPA's authorization to proceed.

E. If at any time thereafter, Respondent proposes to use a different Supervising Contractor for Work at the Site, Respondent shall notify EPA and shall obtain an authorization to proceed from EPA before a new Supervising Contractor performs any Work under this Order. Any change in the Supervising Contractor made pursuant to this paragraph, shall not excuse any Work, deadlines, or schedules required under this Order.

F. The purpose of the Remedial Design and Remedial Action is to design, construct, operate and maintain, and monitor the performance of the selected remedy to ensure protection of human health and the environment. The Remedial Design (discussed in Paragraph G. below) includes those activities to be undertaken by Respondent to develop the final plans and specifications, general provisions, and special requirements necessary to translate the ROD into the remedy to be constructed during the Remedial Action phase (discussed in more detail in Paragraph H. below). The Remedial Action involves the implementation phase of Site cleanup or actual construction of the remedy. The Remedial Action is based on the Remedial Design to achieve the Performance Standards at the Site. The major tasks that Respondent must complete

10

and the deliverables associated with each task to support the Work are described in the following paragraphs of this Order. EPA approval of a task or deliverable shall not be construed as a guarantee of the ultimate adequacy of such a task or deliverable.

G. Remedial Design

1. Within 30 days after EPA's issuance of an authorization to proceed pursuant to Paragraph C or D above, Respondent and Supervising Contractor shall sponsor an Remedial Design Kick-Off Meeting to present the approach and basis for the Remedial Design to EPA and SCDHEC. The purpose of this meeting is to solicit input from EPA/SCDHEC on the overall design basis and approach to implementation prior to submission of the Remedial Design document described below.

2. Subsequent to EPA's issuance of an authorization to proceed pursuant to Paragraph C or D above, Respondent shall implement Remedial Design activities in accordance with the EPA-approved Remedial Design Work Plan attached to this Order as Appendix 3. Remedial Design submittals and project sequencing shall be implemented in accordance with the schedule attached as Figure 2 to the Remedial Design Work Plan. Modifications to the Remedial Design project schedule may be made with mutual consent between the EPA Project Coordinator and Respondent's Project Coordinator designated pursuant to Section XVII of this Order.

3. The Final Remedial Design Report shall include design drawings and construction specifications suitable for construction of EPA's selected response actions in the ROD. At a minimum, the Final Design Report shall address the following components: 1) A site preparation and construction sequencing plan for the step-wise implementation of the Remedial Action; 2) Delineation of the applicable or relevant and appropriate permitting requirements; 3) A health and safety construction plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120; 4) A performance monitoring plan designed to provide a mechanism to verify that Performance Standards have been achieved, and to ensure that the remedy provides adequate, long-term protection of human health and the environment; 5) A quality assurance/quality control plan to ensure the validity of data generated while conducting the Work under this Order; 6) An operation and maintenance plan to ensure effective operation of the remedy and treatment system on a continuous basis; 7) A detailed construction and remedy implementation schedule; 8) A revised construction and/or remedy cost estimate; and 9) Results of supplemental data acquisition activities conducted to support the development of the Remedial Design, if applicable.

4. EPA review, comment and approval of the Remedial Design shall be conducted in accordance with the provisions of Section XIII (EPA Review of Submissions) of this Order.

5. At a minimum, four (4) copies of the Remedial Design documents shall be submitted to the EPA Project Coordinator listed in Section XVII of this Order. Furthermore, two (2) copies of the Remedial Design documents shall be submitted to the SCDHEC Project Coordinator listed in Section XVII of this Order.

11

### H. Remedial Action

1. Upon EPA approval of the Final Design Report, Respondent shall implement the activities required under the Remedial Design pursuant to the approved schedule contained therein. Unless otherwise directed by EPA, Respondent shall not commence physical on-site activities at the Site prior to approval of the Remedial Design.

2. Respondent shall notify EPA in writing of the name, title, and qualifications of the construction contractor proposed to be used in carrying out the Work under this Order. If at any time Respondent proposes to change the construction contractor, Respondent shall notify EPA immediately before the new construction contractor performs any of the Work under this Order.

### I. Performance Standards

The Work performed by Respondent pursuant to this Order shall, at a minimum, achieve the Performance Standards.

### J. Warranties

Notwithstanding any action by EPA, Respondent remains fully responsible for achievement of the Performance Standards. Nothing in this Order, or in EPA's approval of the Remedial Design, or approval of any other submission, shall be deemed to constitute a warranty or representation of any kind by EPA that full performance of the Remedial Design or Remedial Action will achieve the Performance Standards. Respondent's compliance with such approved documents does not foreclose EPA from seeking additional work to achieve the applicable Performance Standards.

### K. Notification of Off-Site Waste Shipment

All materials removed from the Site shall be disposed of or treated at a facility approved by the EPA Project Coordinator and in accordance with Section 121(d)(3) of CERCLA, 42 U.S.C. 9621(d)(3), with the U.S. EPA "Off-Site Policy," 40 CFR § 300.440 (50 Fed. Reg. 49200, September 22, 1993), and with all other applicable federal, state and local requirements. Respondent shall, prior to any off-Site shipment of hazardous substances from the Site to an off-Site waste management facility, provide written notification to the appropriate state environmental official in the receiving state and to the EPA Project Coordinator, of such shipment of hazardous substances. However, the notification of shipments shall not apply to any off-Site shipments when the total volume of all shipments from the Site to the state will not exceed ten (10) cubic yards.

1. The notification shall be in writing, and shall include the following information, where available: (a) the name and location of the facility to which the hazardous substances are to be shipped; (b) the type and quantity of the hazardous substances to be shipped; (c) the expected schedule for the shipment of the hazardous substances; and (d) the method of transportation.

12

Respondent shall notify the receiving state of major changes in the shipment plan, such as a decision to ship the hazardous substances to another facility within the same state, or to a facility in another state.

2. The identity of the receiving facility and state will be determined by Respondent following the award of the contract for Remedial Action construction. Respondent shall provide all relevant information on the off-site shipments as soon as practicable after the award of the contract and before the hazardous substances are actually shipped.

3. The contents of this provision shall not be considered to be approval of the off-Site shipment of materials from the Site where the ROD requires treatment and/or storage on-Site.

## IX CERTIFICATION OF COMPLETION

A. Within thirty (30) days after Respondent concludes that the Remedial Action has been fully performed, and that the Performance Standards have been attained, Respondent shall so notify EPA and shall schedule and conduct a pre-certification inspection to be attended by Respondent and EPA. The pre-certification inspection shall be followed by a written Remedial Action Report submitted within thirty (30) days of the inspection by a registered professional engineer and Respondent's Project Coordinator certifying that the Remedial Action has been completed in full satisfaction of the requirements of this Order. If, after completion of the pre-certification inspection and receipt and review of the Remedial Action Report, EPA determines that the Remedial Action or any portion thereof has not been completed in accordance with the Order, EPA shall notify Respondent in writing of the activities that must be undertaken to complete the Remedial Action and shall set forth in the notice a schedule for performance of such activities. Respondent shall perform all activities described in the notice in accordance with the specifications and schedules established therein. If EPA concludes, following the initial or any subsequent certification of completion by Respondent that the Remedial Action has been fully performed in accordance with this Order, EPA may notify Respondent that the Remedial Action has been fully performed. EPA's notification shall be based on present knowledge and Respondent's certification to EPA, and shall not limit EPA's right to perform periodic reviews pursuant to Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), or to take or require any action that in the judgment of EPA is appropriate at the Site, in accordance with 42 U.S.C. §§ 9604, 9606, or 9607.

B. The Remedial Action Report shall be comprised of and address the following elements: 1) A synopsis of the Work performed pursuant to this Order and a demonstration that the Performance Standards have been achieved; 2) Certification that the Remedial Action has been completed in full satisfaction of the requirements of this Order; 3) Description of how outstanding items noted in the pre-certification inspection were resolved, if applicable; 4) Explanation of modifications made during the Remedial Action to the EPA approved Remedial Design and why those changes were made; 5) As-built drawings; 6) Summary of data generated pursuant to performance monitoring program established in EPA approved Remedial Design; and 7)

13

Description of on-going operation and maintenance program.

## X  EPA PERIODIC REVIEW

Under Section 121(c) of CERCLA, 42 U.S.C. §9621(c), and any applicable regulations, EPA may review the Site to assure that the Work performed pursuant to this Order adequately protects human health and the environment. Respondent shall conduct the requisite studies, investigations, or other response actions as determined necessary by EPA in order to permit EPA to conduct the review under Section 121(c) of CERCLA. As a result of any review performed under this paragraph, Respondent may be required to perform additional response actions or to modify the Work previously performed.

## XI  ADDITIONAL RESPONSE ACTION

A. EPA may determine that, in addition to the Work identified in this Order and attachments to this Order, additional response actions may be necessary to meet the Performance Standards or to protect human health and the environment. If EPA determines that additional response actions are necessary, EPA will notify Respondent and may require Respondent to submit a work plan for such additional response actions. EPA may also require Respondent to modify any plan, design, or other deliverable required by this Order, including any approved modifications. Respondent shall notify EPA of their intent to perform such additional response actions within seven (7) days after receipt of EPA's request for additional response actions.

B. Unless otherwise stated by EPA, not later than thirty (30) days after receiving EPA's notice that additional response actions are required pursuant to this Section, Respondent shall submit a work plan for the additional response actions ("Additional Response Action Plan") to EPA for review and approval. The plan shall conform to the applicable requirements of Sections VIII (Work to be Performed), XV (Quality Assurance Sampling and Data Analysis), and XVI (Compliance with Applicable Laws) as appropriate. Upon approval by EPA the Additional Response Action Plan shall be incorporated into this Order as a requirement of this Order and shall be an enforceable part of this Order as if fully set forth herein. Upon approval of the Additional Response Action Plan pursuant to the procedures set forth in Section XIII (EPA Review of Submissions), Respondent shall implement the Additional Response Action Plan according to the standards, specifications, and schedule in the approved Additional Response Action Plan.

## XII  ENDANGERMENT AND EMERGENCY RESPONSE

A. In the event of any action or occurrence after the effective date of this Order which causes or threatens a release of a hazardous substance or which may present an immediate threat to public health or welfare or the environment, Respondent shall immediately take all appropriate action to prevent, abate, or minimize such release or endangerment, and shall immediately notify EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's alternative Project Coordinator. If neither of these persons is available, Respondent shall notify the EPA Region 4

Hotline at (404) 562-8700. Respondent shall take such action in consultation with EPA's Project Coordinator and in accordance with all applicable provisions of this Order. In the event that Respondent fail to take appropriate response action as required by this Section, and EPA takes that action instead, EPA reserves the right to pursue reimbursement of all EPA's costs attributable to the response action that are not inconsistent with the NCP.

B. Nothing in the preceding paragraph shall be deemed to limit any authority of the United States to take, direct, or order any appropriate action necessary to protect human health and the environment or to prevent, abate, or minimize an actual or threatened release of hazardous substances on, at, or from the Site.

## XIII. EPA REVIEW OF SUBMISSIONS

A. Upon receipt of any plan, report, or other item which is required to be submitted for approval pursuant to this Order, EPA shall, in writing, either: 1) approve the submission; or 2) disapprove the submission, notifying Respondent of deficiencies. If such submission is disapproved, EPA shall either: 1) direct Respondent to modify the submission and, if necessary, the underlying Work, to correct the deficiencies; or 2) if Respondent refuses, notify Respondent that EPA will assume the responsibility for modifying the submission to correct the deficiencies, including, if necessary, the underlying Work.

B. In the event of approval or modification by EPA, Respondent shall proceed to take any action required by the plan, report, or other item, as approved or modified.

C. Upon receipt of a written notice of disapproval and directive for modification, Respondent shall, within thirty (30) days or such other time as specified by EPA in its notice of disapproval or request for modification, correct the deficiencies and resubmit the plan, report, or other item for approval. Notwithstanding the notice of disapproval, Respondent shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.

D. If, upon resubmission, the plan, report, or item is not approved, Respondent shall be deemed to be in violation of this Order.

E. The provisions of this Order shall govern all proceedings regarding the Work performed pursuant to this Order. In the event of any inconsistency between this Order and any required deliverable submitted by Respondent, the inconsistency will be resolved in favor of this Order.

## XIV. PROGRESS REPORTS

A. In addition to the deliverables set forth in this Order, Respondent shall submit written monthly progress reports to EPA with respect to actions and activities undertaken pursuant to this Order. The progress reports shall be submitted on or before the 10th day of each month beginning thirty (30) days following the effective date of this Order. Respondent's obligation to submit progress reports continues until EPA gives Respondent written notice that Respondent has

15

demonstrated, to EPA's satisfaction, that all of the terms of this Order, including any additional tasks which EPA has determined to be necessary, have been completed, or until Respondent begins implementation of the final remedy, at which time progress reports for the Site-wide remedy will be submitted. In addition. EPA may request periodic briefings by Respondent to discuss the progress of the Work.

B. At a minimum, these progress reports shall: 1) describe the actions which have been taken to comply with this Order during the prior month; 2) include all results of sampling and tests and all other data received by Respondent and not previously submitted to EPA; 3) include all plans, reports, deliverables, and procedures completed under the work plans during the previous month; 4) describe all work planned for the next month with schedules relating such work to the overall project schedule for RA completion; and 5) describe all problems encountered and any anticipated problems, any actual or anticipated delays, and solutions developed and implemented to mitigate or address any actual or anticipated problems or delays.

C. Upon the occurrence of any event during performance of the Work or additional response actions which, pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, requires reporting to the National Response Center, Respondent shall promptly orally notify the EPA Project Coordinator, or in the event of the unavailability of the EPA Project Coordinator, the EPA Region 4 Hotline at (404) 562-8700 in addition to the reporting required by Section 103 of CERCLA, 42 U.S.C. § 9603. Within ten (10) days of the onset of such an event, Respondent shall furnish to the EPA a written report setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, Respondent shall submit a report setting forth all actions taken.

## XV. QUALITY ASSURANCE SAMPLING AND DATA ANALYSIS

A. Respondent shall use the quality assurance, quality control, and chain of custody procedures in accordance with the "Environmental Investigations Standard Operating Procedures and Quality Assurance Manual" (U.S. EPA Region 4 Science and Ecosystems Support Division, May 1996) and subsequent amendments to such guidelines, or other applicable or relevant and appropriate guidelines, while conducting all sample collection and analysis activities required herein by any plan.

B. Respondent shall make available to EPA the results of all sampling and/or tests or other data generated by Respondent with respect to the implementation of this Order, and shall submit these results in monthly progress reports as described in Section XIV (Progress Reports) of this Order.

C. At the request of EPA, Respondent shall allow split or duplicate samples to be taken by EPA and/or their authorized representatives, of any samples collected by Respondent pursuant to the implementation of this Order. Respondent shall notify EPA not less than fourteen (14) days in advance of any sample collection activity. In addition, EPA shall have the right to take any additional samples that EPA deems necessary.

16

D. Respondent shall ensure that the laboratories utilized by Respondent for analyses participates in an EPA quality assurance/quality control program equivalent to that which is followed by EPA and which is consistent with the "Environmental Investigations Standard Operating Procedures and Quality Assurance Manual" (U.S. EPA Region 4 Science and Ecosystems Support Division, May 1996). In addition, EPA may require Respondent to submit data packages equivalent to those generated in the EPA Contract Laboratory Program (CLP) and may require laboratory analysis by Respondent of performance samples (blank and/or spike samples) in sufficient number to determine the capabilities of the laboratory.

E. Notwithstanding any provision of this Order, the United States hereby retains all of its information gathering, inspection and enforcement authorities and rights under CERCLA, the Solid Waste Disposal Act (SWDA), 42 U.S.C. §§ 6901 et seq., and any other applicable statutes or regulations.

## XVI. COMPLIANCE WITH APPLICABLE LAWS

A. All actions by Respondent pursuant to this Order shall be performed in accordance with the requirements of all applicable or relevant and appropriate laws, as required by CERCLA and the NCP. The United States has determined that the activities contemplated by this Order are consistent with the NCP.

B. Except as provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and the NCP, no permit shall be required for any portion of the Work conducted entirely on the Site. Where any portion of the Work requires a federal or state permit or approval under CERCLA and the NCP, Respondent shall submit on a timely basis applications and take all other actions necessary to obtain all such permits or approvals.

C. This Order is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

D. Respondent shall include in all contracts or subcontracts entered into for Work required under this Order provisions stating that such contractors or subcontractors, including their agents and employees, shall perform all activities required by such contracts or subcontracts in compliance with all applicable laws and regulations. Respondent shall provide a certification to the United States that such provision has been included in its contracts and subcontracts, within fifteen (15) days of final execution of contracts for Remedial Design, Remedial Action, Operation and Maintenance, and Performance Monitoring work.

## XVII. PROJECT COORDINATOR

A. Within five (5) days after the effective date of this Order, Respondent shall designate a Project Coordinator and shall submit the name, address, and telephone number of the Project Coordinator to EPA. Respondent's Project Coordinator shall be responsible for overseeing the implementation of this Order. If Respondent wish to change its Project Coordinator, Respondent

17

shall provide written notice to EPA, five (5) days prior to changing the Project Coordinator, of the name and qualifications of the new Project Coordinator.

B. All communications, whether written or oral, from Respondent to EPA shall be directed to EPA's Project Coordinator or Alternate Project Coordinator who shall be a Remedial Project Manager (RPM) or On-Scene Coordinator (OSC). EPA's Project Coordinator is:

> Mr. Craig Zeller, P.E.
> Remedial Project Manager
> United States Environmental Protection Agency
> 61 Forsyth St.
> Atlanta, Georgia 30303
> (404) 562-8827

EPA's Alternate Project Coordinator is:

> Robert Jourdan, Chief
> North Superfund Management Branch
> United States Environmental Protection Agency
> 61 Forsyth St.
> Atlanta, Georgia 30303
> (404) 562-8790

SCDHEC's Project Coordinator is:

> Mr. Richard Haynes, P.E.
> SCDHEC
> Bureau of Land and Waste Management
> 2600 Bull Street
> Columbia, SC 29201
> (803) 896-4070

C. EPA has the unreviewable right to change its Project Coordinator or Alternate Project Coordinator. If EPA changes its Project Coordinator or Alternate Project Coordinator, EPA will inform Respondent in writing of the name, address, and telephone number of the new Project Coordinator or Alternate Project Coordinator.

D. EPA's Project Coordinator and Alternative Project Coordinator shall have the authority lawfully vested in a RPM and OSC by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternative Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any work required by this Order and to take any necessary response action.

E. The absence of the EPA Project Coordinator from the Site shall not be cause for

18

stoppage or delay of Work.

### XVIII.  SITE ACCESS

A. At all reasonable times from the effective date of this Order until EPA provides written notification that the Work has been completed pursuant to Section IX (Certification of Completion) of this Order, EPA and its authorized representatives and contractors shall have the authority to enter and freely move about all property at the Site and off-Site areas to which access is required to implement this Order, including areas subject to or affected by the cleanup or where documents required to be prepared or maintained by this Order are located, to the extent access to the property is controlled by or available to Respondent. Access shall be allowed for the purposes of conducting any activity authorized by or related to this Order, including but not limited to: 1) inspecting conditions, activities, the results of activities, records, operating logs, and contracts related to the Site or Respondent and its representatives or contractor pursuant to this Order; 2) reviewing the progress of Respondent in carrying out the terms of this Order; 3) conducting tests or inspections as EPA or its authorized representatives or contractors deem necessary to verify data or information submitted to EPA, take samples or investigate contamination at or near the Site; 4) assess the need for planning and implementing additional remedial or response activities at or near the Site; or 5) using a camera, sound recording device or other documentary-type equipment.

### XIX.  ACCESS TO SITE NOT OWNED BY RESPONDENTS

A. If the Site, or the off-Site area that is to be used for access, or other property subject to or affected by the cleanup or where documents required to be prepared or maintained by this Order are located, is controlled or owned in whole or in part by parties other than Respondent, Respondent will obtain, or use its best efforts to obtain, access agreements from such parties within ninety (90) days of the effective date of this Order. Such agreements shall provide access for EPA, its contractors and oversight officials, the State and its contractors, and Respondent or Respondent's authorized representatives and contractors, and such agreements shall specify that Respondent is not EPA's representative with respect to liability associated with Site activities. Copies of such agreements shall be provided to EPA prior to Respondent's initiation of field activities.

B. If access agreements are not obtained within the time referenced above, Respondent shall immediately notify EPA in writing of its failure to obtain access. EPA may use its legal authorities to obtain access for Respondent, may perform those tasks or activities requiring access with EPA contractors, or may terminate the Order if Respondent cannot obtain access agreements. If EPA performs those tasks or activities requiring access with EPA contractors and does not terminate the Order, Respondent shall perform all other activities not requiring such access, and shall be liable to EPA for reimbursement of all costs, including attorney fees, incurred in performing such activities. Respondent shall integrate the results of any such tasks undertaken by EPA into their reports and deliverables. EPA reserves the right to seek cost recovery for all costs and attorney fees incurred by the United States to obtain access for Respondent.

19

C. Notwithstanding any provision of this Order, the United States retains all of its access authorities and rights under CERCLA and any other applicable statutes or regulations.

## XX. ACCESS TO INFORMATION AND DATA/DOCUMENT AVAILABILITY

A. Respondent shall provide to EPA and its authorized representatives, upon request, access to inspect and/or copy all documents and information in its possession and/or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Order, including all files, records, documents, photographs, sampling and analysis records, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information relating to remedial activities and other Work required under the Order.

B. Respondent may assert a claim of business confidentiality covering part or all of the information submitted to EPA pursuant to the terms of this Order under 40 C.F.R. § 2.203, to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7). This claim shall be asserted in the manner described by 40 C.F.R. § 2.203(b) and shall be substantiated by Respondent at the time the assertion is made. Information determined to be confidential by EPA will be given the protection specified in 40 C.F.R. Part 2. If no claim of confidentiality accompanies specific documents or information when they are submitted to EPA, or if EPA has notified the Respondent that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA and 40 C.F.R. § 2.203(b), the public may be given access to such documents or information by EPA or the State without further notice to Respondent.

C. Respondent shall not assert confidentiality claims with respect to any data related to Site conditions, sampling, or monitoring.

D. Respondent shall maintain, for the period during which this Order is in effect, an index of documents that Respondent claims contain privileged information or confidential business information. The index shall contain, for each document, the date, author, addressee, and subject of the document. Upon written request from EPA, Respondent shall submit a copy of the index to EPA.

## XXI. RECORD PRESERVATION

A. Respondent shall provide to EPA, upon request, copies of all documents and information within, or which come within, their possession and/or control or the control of their contractors or agents relating to activities at the Site or to the implementation of this Order, including but not limited to sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Respondent shall also make available to EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

20

B. Until EPA provides written notification that the Work has been completed pursuant to Section IX (Certification of Completion), Respondent shall preserve and retain, and shall instruct its contractors and agents to preserve and retain, all documents, records, and information of whatever kind, nature, or description relating to the performance of the Work.

C. All records and documents in Respondent's possession at any time prior to termination of this Order, that relate in any way to the Site shall be preserved and retained by Respondent for a minimum of ten (10) years after EPA provides written notification, pursuant to Section IX (Certification of Completion) of this Order, that the Work has been completed. Respondent shall acquire and retain copies of all documents that relate to the Site and that are in the possession of its employees, agents, accountants, contractors, or attorneys. After this ten (10)-year period, Respondent shall notify EPA at least ninety (90) days before the documents are scheduled to be destroyed and, upon request of EPA, shall deliver said records or documents to EPA at no cost.

D. EPA has the discretion to request that all records and documents be retained for a longer period of time by Respondent.

E. Within 45 days after the effective date of this Order, Respondent shall submit a written certification to EPA's Project Coordinator that it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information relating to Respondent's potential liability with regard to the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site. Respondent shall not dispose of any such documents without prior approval by EPA. Respondent shall, upon EPA's request and at no cost to EPA, deliver the documents or copies of the documents to EPA.

## XXII.  DELAY IN PERFORMANCE

A. Any delay in performance of this Order that, in EPA's judgment, is not properly justified by Respondent under the terms of this paragraph shall be considered a violation of this Order. No delay in performance of this Order shall affect Respondent's obligations to fully perform all obligations under the terms and conditions of this Order.

B. Respondent shall notify EPA of any delay or anticipated delay in achieving compliance with any requirement of this Order. Such notification shall be made by telephone to EPA's Project Coordinator or Alternate Project Coordinator within 48 hours after Respondent first knew or should have known that an event might cause a delay. Respondent shall adopt all reasonable measures to avoid or minimize any such delay. Within five (5) business days after notifying EPA by telephone, Respondent shall provide written notification fully describing the nature of the delay, the reasons the delay is beyond the control of Respondent, any defenses under Section 106(b)(1), 42 U.S.C. § 9606(b)(1), available to Respondent for failing to comply with any relevant requirements of this Order, the measures planned and taken to minimize the delay, and a schedule for implementing the measures that will be taken to mitigate the effect of the delay. Financial inability to perform the Work, increased costs or expenses associated with implementation of the activities required by this Order, or failure to attain the Performance

DEC Case 2:06-00589-RB Doc #TTSPE Filed 02/08/16 12 EDP Page 02/08/16 09:42:24 Desc Main
JAN 20 '99 17:08 FR BB&1 CHL Document Page 61 of 25
1-20-99 2:41PM

SENT BY:

21

Standards shall not be considered circumstances beyond the control of Respondent.

## XXIII. ASSURANCE OF ABILITY TO COMPLETE WORK AND INSURANCE

A. Respondent shall demonstrate its ability to complete the Work required by this Order and to pay all claims that arise from the performance of the Work by obtaining, and presenting to EPA within thirty (30) days of the effective date of this Order, one of the following: (1) a performance bond; (2) a letter or letters of credit; (3) a guarantee by a third party; (4) a suitable insurance policy; or (5) internal financial information to allow EPA to determine that Respondent have sufficient assets available to perform the Work. Respondent shall demonstrate financial assurance in an amount no less than the estimated cost for the Remedial Design and Remedial Action contained in the Record of Decision for the Site. If Respondent seeks to demonstrate ability to complete the Work by means of internal financial information, or by guarantee of a third party, it shall re-submit such information annually, within ninety (90) days after the close of each fiscal year of Respondent. If EPA determines that such internal financial information is inadequate, Respondent shall, within thirty (30) days after receipt of written notice of EPA's determination, obtain and present to EPA for approval one of the other three forms of financial assurance listed above. Respondent's lack of ability to demonstrate financial ability to complete any aspect of the Work shall not excuse compliance with this Order or any term thereof.

B. No later than ten (10) days prior to commencing any field work at the Site pursuant to this Order, Respondent shall secure, and shall maintain until the fifth anniversary of EPA's written notification, pursuant to Section IX (Certification of Completion) of this Order, that the Work has been completed, comprehensive general liability insurance with a combined single limit of at least three (3) million dollars naming the United States as an additional insured with respect to Work performed under this Order. No later than fifteen (15) days after the effective date of this Order, Respondent shall secure, and shall maintain until the fifth anniversary of EPA's written notification, pursuant to Section IX (Certification of Completion) of this Order, that the Work has been completed, automobile liability insurance with limits of $500,000 naming the United States as an additional insured with respect to Work performed under this Order. In addition, Respondent shall submit to EPA a certification that their contractors and subcontractors have adequate insurance coverage or have indemnification for liabilities for injuries or damages to persons or property which may result from the activities to be conducted by or on behalf of Respondent pursuant to this Order. Respondent shall ensure that such insurance or indemnification is maintained for the duration of the Work required by this Order. Prior to commencement of the Work under this Order, Respondent shall provide to EPA certificates of such insurance or copies of the insurance policies. If Respondent demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to matters so insured by that contractor or subcontractor, Respondent need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

C. For the duration of this Order, Respondent shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision

22

of workers' compensation insurance for all persons performing work on behalf of Respondent in furtherance of this Order.

## XXIV. REIMBURSEMENT OF RESPONSE COSTS

A. EPA reserves the right to demand that Respondent reimburse EPA for all response costs incurred by the United States including those costs incurred in overseeing Respondent's implementation of the requirements of this Order or in performing any response action which Respondent fail to perform pursuant to this Order. EPA may submit to Respondent, on a periodic basis, an accounting of all response costs incurred by the United States with respect to this Order. Response costs may include, but are not limited to, costs incurred by the United States in overseeing Respondent's implementation of the requirements of this Order and in performing activities as part of the RD/RA and community relations, including any costs incurred while obtaining access for Respondent. Costs shall include all direct and indirect costs, including, but not limited to, time and travel costs of EPA personnel and associated indirect costs, contractor costs, cooperative agreement costs, compliance monitoring, including the collection and analysis of split samples, inspection of RD/RA activities, Site visits, discussions regarding disputes that may arise as a result of this Order, review and approval or disapproval of reports, and costs of performing any Work which Respondent failed to perform pursuant to this Order. EPA's Agency Financial Management System summary data (SPUR Reports), or such other data summary as provided by EPA, shall serve as the basis for payment demands.

B. EPA's demand for payment shall request that Respondent, within sixty (60) days of receipt of each EPA accounting, remit a certified or cashier's check for the amount of those costs. Interest shall accrue from the latter of the date that payment of a specified amount is demanded in writing, or the date of the expenditure. The interest rate is the rate established by the Department of the Treasury pursuant to 31 U.S.C. § 3717 and 4 C.F.R. § 102.13.

C. Checks shall be made payable to "EPA Hazardous Substances Superfund" and shall include the name of the Site, the Site, identification number, the account number and the title of this Order. Checks shall be forwarded to:

> EPA-REGION 4
> Attn: Superfund Accounting
> P.O. Box 100142
> Atlanta, GA 30384

D. Respondent shall send copies of each check and transmittal letter to EPA's Project Coordinator.

## XXV. UNITED STATES NOT LIABLE

The United States, by issuance of this Order, assumes no liability for any injuries or damages to persons or property resulting from acts or omissions by Respondent, or its directors, officers,

employees, agents, representatives, successors, assigns, contractors. or consultants in carrying out any action or activity pursuant to this Order. Neither EPA nor the United States may be deemed to be a party to any contract entered into by Respondent or its directors, officers, employees, agents, successors, assigns, contractors, or consultants in carrying out any action or activity pursuant to this Order.

## XXVI. ENFORCEMENT AND RESERVATIONS

A. EPA reserves the right to bring an action against Respondent under Section 107 of CERCLA, 42 U.S.C. § 9607, for recovery of any past or future response costs incurred by the United States related to the Site and not previously reimbursed by Respondent. This reservation shall include but not be limited to past costs, indirect costs, the cost of oversight, costs for compiling the cost documentation to support an oversight cost demand, as well as accrual of interest as provided in Section 107(a) of CERCLA.

B. Notwithstanding any other provision of this Order, at any time during the response action, EPA may perform its own studies, complete the response action (or any portion of the response action) as provided in CERCLA and the NCP, and seek reimbursement from Respondent for its costs, or seek any other appropriate relief.

C. Nothing herein shall preclude EPA from continuing any existing enforcement actions and/or taking any additional enforcement actions, including modification of this Order or issuance of additional orders, and/or additional remedial or removal actions as EPA may deem necessary, or from requiring Respondent in the future to perform additional activities pursuant to CERCLA, 42 U.S.C. § 9606(a), et seq. or any other applicable law, or from seeking judicial enforcement of this Order. Respondent shall be liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), for the costs of any such additional actions.

D. Notwithstanding any other provision of this Order, the United States hereby retains all of its information gathering, inspection and enforcement authorities and rights under CERCLA, SWDA, and any other applicable statutes and regulations.

E. Respondent shall be subject to civil penalties under Section 106(b) of CERCLA, 42 U.S.C. § 9606(b), of not more than $27,500 for each day in which a violation of this Order occurs or such failure to comply continues. Failure to comply with this Order, or any portion hereof, without sufficient cause, may result in liability under Section 107(c)(3) of CERCLA, 42 U.S.C. § 9607(c)(3), for punitive damages in an amount at least equal to, and not more than three times the amount of any costs incurred by the Fund (as defined in CERCLA) as a result of such failure to take proper action.

F. Nothing in this Order shall constitute or be construed as a release from any claim, cause of action, or demand in law or equity against any person, firm, partnership, subsidiary or corporation for any liability it may have arising out of or relating in any way to the Site.

24

## XXVII. ADMINISTRATIVE RECORD

Upon request by EPA, Respondent must submit to EPA all documents related to the selection of the response action for possible inclusion in the administrative record file.

## XXVIII. EFFECTIVE DATE AND COMPUTATION OF TIME

This Order shall be effective five (5) days after this Order is signed by the Director of the Waste Management Division, EPA Region 4. All times for performance of ordered activities shall be calculated from this effective date. When computing any period of time under this Order, if the last day would fall on a Saturday, Sunday, or legal holiday, the period shall run until the next working day.

## XXIX. OPPORTUNITY TO CONFER

A. Respondent may, within five (5) days after this Order is signed by the Director of the Waste Management Division, EPA Region 4, make a written or oral request for a conference with EPA Region 4 to discuss this Order. If requested, the conference shall occur at 61 Forsyth Street, Atlanta, GA 30303. All telephone communications regarding a conference should be directed to Mr. Kevin T. Beswick, Assistant Regional Counsel, at (404)562-9580. The written request for a conference may be delivered to EPA by some means of personal delivery other than certified mail.

B. The purpose and scope of the conference shall be limited to issues involving the implementation of the response actions required by this Order and the extent to which Respondent intends to comply with this Order. This conference is not an evidentiary hearing, and does not constitute a proceeding to challenge this Order. It does not give Respondent a right to seek review of this Order, or to seek resolution of potential liability, and no official stenographic record of the conference will be made. At any conference held pursuant to Respondent's request, Respondent may appear in person or by an attorney or other representatives.

## XXX. NOTICE OF INTENT TO COMPLY

Respondent shall provide, not later than five (5) days after the effective date of this Order, written or verbal notice to EPA stating unequivocally whether it will comply with the terms of this Order. Any verbal notice must be confirmed in writing within two (2) days of the giving of such verbal notice. A written notice of intent (or written confirmation, as the case may be) may be delivered to EPA by some means of personal delivery other than certified mail. If Respondent does not provide notice within five (5) days as specified above, or if Respondent provides notice which does not state unequivocally that Respondent will comply with the terms of this Order, then Respondent shall be deemed to have to have failed and refused to comply with this Order and to have violated this Order. The written notice or written confirmation required by this paragraph shall set forth, using facts that exist on or prior to the effective date of this Order, any "sufficient cause" defenses asserted by Respondent under Sections 106(b) and 107(c)(3) of CERCLA. The absence of a response by EPA to the notice required by this paragraph shall not be deemed to be

25

an acceptance of Respondent's assertions.

## XXXI. MODIFICATION

No material modifications shall be made to this Order without written notification to and written approval of EPA. The notification required by this Section shall set forth the nature of and reasons for the requested modification. No oral modification of this Order shall be effective. Modifications that do not materially alter the requirements of this Order, such as minor schedule changes, may be made upon the written approval of EPA. Nothing in this paragraph shall be deemed to alter EPA's authority to supervise and modify this Order.

So Ordered, this 18th day of Jan 1999

BY:

Richard D. Green
Director, Waste Management Division
Region 4
U.S. Environmental Protection Agency

26

## APPENDICES

Appendix 1   Record of Decision

Appendix 2   Site Map

Appendix 3   Remedial Design Work Plan

Debtor    **Ashley I, LLC**                                                    Case number *(if known)*

■ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.    **Cherokee Investment Services, Inc.**<br>**111 E. Hargett Street, Ste. 300**<br>**Raleigh, NC 27601** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

■ None

| Name and address |
|---|

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Prodel, LLC** | **9804 Koupela Drive**<br>**Raleigh, NC 27614** | **Manager** | **0 interest** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Cherokee Ashley, LLC** | **111 E. Hargett Street, Ste. 300**<br>**Raleigh, NC 27601** | **Managing Member** | **100%** |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

■ No
☐ Yes. Identify below.

**30. Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

■ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

Debtor    **Ashley I, LLC** _____    Case number *(if known)* _____

☒ No

☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☒ No

☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

**Part 14:   Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **February  8, 2016** _____

| /s/ Prodel, LLC, Manager, By:  Craig A. Briner | Prodel, LLC, Manager, By:  Craig A. Briner |
|---|---|
| Signature of individual signing on behalf of the debtor | Printed name |

Position or relationship to debtor    **Manager** _____

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☒ No

☐ Yes

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## District of South Carolina

In re  **Ashley I, LLC**

Debtor(s)

Case No.

Chapter  **11**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 47,540.43 |
| Prior to the filing of this statement I have received | $ | 47,540.43 |
| Balance Due | $ | 0.00 |

2.   The source of the compensation paid to me was:

☐ Debtor      ■ Other (specify):   **Ashley II of Charleston, LLC**

3.   The source of compensation to be paid to me is:

■ Debtor      ☐ Other (specify):

4.   ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

a.   [Other provisions as needed]
   **Above is retainer only.  Fees billed hourly as outlined in Application to Employ to be filed at a future date.**

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:
   **None.**

---

### CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

| | |
|---|---|
| **February  8, 2016** | **/s/ G. William McCarthy Jr.** |
| *Date* | **G. William McCarthy Jr. 2762** |
| | *Signature of Attorney* |
| | **McCarthy Law Firm, LLC** |
| | **P. O. Box 11332** |
| | **Columbia, SC 29211-1332** |
| | **803-771-8836  Fax: 803-753-6960** |
| | **bmccarthy@mccarthy-lawfirm.com** |
| | *Name of law firm* |

---

## United States Bankruptcy Court
### District of South Carolina

In re    **Ashley I, LLC**
_____    Case No. _____
                                    Debtor(s)    Chapter    **11**

### LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
| --- | --- | --- | --- |
| **Cherokee Ashley, LLC**<br>**111 E. Hargett Street, Ste. 300**<br>**Raleigh, NC 27601** | | **100%** | **LLC Membership** |

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the **Manager** of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date    **February  8, 2016**
_____    Signature    **/s/ Prodel, LLC, Manager, By:  Craig A. Briner**
                                    **Prodel, LLC, Manager, By:  Craig A. Briner**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

## United States Bankruptcy Court
### District of South Carolina

In re  **Ashley I, LLC** _____     Case No. _____
                                      Debtor(s)          Chapter    **11** _____

# BUSINESS INCOME AND EXPENSES

**FINANCIAL REVIEW OF THE DEBTOR'S BUSINESS**  (NOTE: <u>ONLY INCLUDE</u> information directly related to the business operation.)

**PART A - GROSS BUSINESS INCOME FOR PREVIOUS 12 MONTHS:**

| | | |
|---|---|---:|
| 1. Gross Income For 12 Months Prior to Filing: | $ | 13,080.00 |

**PART B - ESTIMATED AVERAGE FUTURE GROSS MONTHLY INCOME:**

| | | |
|---|---|---:|
| 2. Gross Monthly Income | $ | 1,270.00 |

**PART C - ESTIMATED FUTURE MONTHLY EXPENSES:**

| | | |
|---|---|---:|
| 3. Net Employee Payroll (Other Than Debtor) | $ | 0.00 |
| 4. Payroll Taxes | | 0.00 |
| 5. Unemployment Taxes | | 0.00 |
| 6. Worker's Compensation | | 0.00 |
| 7. Other Taxes | | 5,300.00 |
| 8. Inventory Purchases (Including raw materials) | | 0.00 |
| 9. Purchase of Feed/Fertilizer/Seed/Spray | | 0.00 |
| 10. Rent (Other than debtor's principal residence) | | 0.00 |
| 11. Utilities | | 0.00 |
| 12. Office Expenses and Supplies | | 0.00 |
| 13. Repairs and Maintenance | | 0.00 |
| 14. Vehicle Expenses | | 0.00 |
| 15. Travel and Entertainment | | 0.00 |
| 16. Equipment Rental and Leases | | 0.00 |
| 17. Legal/Accounting/Other Professional Fees | | 0.00 |
| 18. Insurance | | 0.00 |
| 19. Employee Benefits (e.g., pension, medical, etc.) | | 0.00 |

20. Payments to Be Made Directly By Debtor to Secured Creditors For Pre-Petition Business Debts (Specify):

| DESCRIPTION | TOTAL |
|---|---|
| | |

21. Other (Specify):

| DESCRIPTION | TOTAL |
|---|---|
| **R&M** | **1,300.00** |
| **Tax preparation fee** | **300.00** |

| | | |
|---|---|---:|
| 22. Total Monthly Expenses (Add items 3-21) | $ | 6,900.00 |

**PART D - ESTIMATED AVERAGE NET MONTHLY INCOME:**

| | | |
|---|---|---:|
| 23. AVERAGE NET MONTHLY INCOME (Subtract item 22 from item 2) | $ | -5,630.00 |

LOCAL OFFICIAL FORM 1007-1(b) TO SC LBR 1007-1

# United States Bankruptcy Court
### District of South Carolina

In re    **Ashley I, LLC** _____    Case No. _____
                                            Debtor(s)         Chapter    **11** _____

## CERTIFICATION VERIFYING CREDITOR MATRIX

The above named debtor, or attorney for the debtor if applicable, hereby certifies pursuant to South Carolina Local Bankruptcy Rule 1007-1 that the master mailing list of creditors submitted either on computer diskette, electronically filed via CM/ECF, or conventionally filed in a typed hard copy scannable format which has been compared to, and contains identical information to, the debtor's schedules, statements and lists which are being filed at this time or as they currently exist in draft form.

Master mailing list of creditors submitted via:

(a)    _____ computer diskette

(b)    _____ scannable hard copy
(number of sheets submitted _____)

(c)    __**X**__ electronic version filed via CM/ECF

Date:    **February  8, 2016** _____    **/s/ Prodel, LLC, Manager, By:  Craig A. Briner** _____
                                                      **Prodel, LLC, Manager, By:  Craig A. Briner**/**Manager**
                                                      Signer/Title

Date:    **February  8, 2016** _____    **/s/ G. William McCarthy Jr.** _____
                                                      Signature of Attorney
                                                      **G. William McCarthy Jr. 2762**
                                                      **McCarthy Law Firm, LLC**
                                                      **P. O. Box 11332**
                                                      **Columbia, SC 29211-1332**
                                                      **803-771-8836   Fax: 803-753-6960**
                                                      Typed/Printed Name/Address/Telephone

                                                      **2762** _____
                                                      District Court I.D. Number

ASHLEY II OF CHARLESTON, LLC
111 E. HARGETT STREET, STE. 300
RALEIGH NC 27601


ASHLEY RIVER INVESTORS, LLC
180 WESTVACO ROAD
SUMMERVILLE SC 29483


BEAZER EAST, INC.
C/O THREE RIVERS MANAGEMENT, INC.
ONE OXFORD CENTRE, SUITE 3000
PITTSBURGH PA 15219


BOASSO AMERICA CORPORATION
100 INTERMODAL DRIVE
CHALMETTE LA 70043


CHARLESTON COUNTY TAX COLLECTOR
4045 BRIDGE VIEW DRIVE
NORTH CHARLESTON SC 29405


CHARLESTON COUNTY TREASURER
PO BOX 100242
COLUMBIA SC 29202


CHARLESTON RECYCLING & DISPOSAL
4045 BRIDGEVIEW DRIVE
NORTH CHARLESTON SC 29405


CHEROKEE ASHLEY, LLC
111 E. HARGETT STREET, STE. 300
RALEIGH NC 27601


ENVIRONMENTAL PROTECTION AGENCY
REGION 4
ATLANTA FEDERAL CENTER
61 FORSYTH STREET, SW
ATLANTA GA 30303-3104


INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATION
PO BOX 7346
PHILADELPHIA PA 19101-7346

KIM A. JONES, ASST. REGIONAL COUNSEL
U.S. EPA REGION 4
ATLANTA FEDERAL CENTER
61 FORSYTH ST., SW
WASHINGTON DC 20202-8960


KIRKMAN BROADCASTING, INC.
60 MARKFIELD DRIVE, UNIT 4
CHARLESTON SC 29407


MAGNOLIA/ARC LENDER, LLC
C/O BRANCH CAPITAL PARTNERS, LP
3340 PEACHTREE ROAD, STE. 840
ATLANTA GA 30326


PRODEL, LLC
9804 KOUPELA DRIVE
RALEIGH NC 27614


SC DEPARTMENT OF EMPLOYMENT AND WORKFORC
PO BOX 995
COLUMBIA SC 29202


SC DEPT OF REVENUE AND TAXATION
PO BOX 12265
COLUMBIA SC 29211


SC DHEC
2600 BULL STREET
COLUMBIA SC 29201


U.S. SECURITIES AND EXCHANGE COMM
OFFICE OF REORGANIZATION
950 EAST PACES FERRY ROAD, NE
SUITE 900
ATLANTA GA 30326-1382

# United States Bankruptcy Court
### District of South Carolina

In re    __Ashley I, LLC__

Debtor(s)

Case No. _____

Chapter    __11__

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for __Ashley I, LLC__ in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

**Cherokee Ashley, LLC**
**111 E. Hargett Street, Ste. 300**
**Raleigh, NC 27601**

☐ None [*Check if applicable*]

__February  8, 2016__

Date

__/s/ G. William McCarthy Jr.__
**G. William McCarthy Jr. 2762**

Signature of Attorney or Litigant

Counsel for    __Ashley I, LLC__
**McCarthy Law Firm, LLC**
**P. O. Box 11332**
**Columbia, SC 29211-1332**
**803-771-8836 Fax:803-753-6960**
**bmccarthy@mccarthy-lawfirm.com**