**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Ashley I, LLC<br><br>Debtor. | Case No. 16-00559-dd<br><br>Chapter 11 |
| In re:<br><br>Ashley II of Charleston, LLC<br><br>Debtor. | Case No. 16-00560-dd<br><br>Chapter 11 |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER DIRECTING JOINT ADMINISTRATION OF THE RELATED CHAPTER 11 CASES AND REQUEST FOR EMERGENCY HEARING**

Ashley I, LLC ("Ashley I") and Ashley II of Charleston, LLC ("Ashley II") (Ashley I and Ashley II will be collectively hereinafter referred to as the "Debtors"), the above-captioned debtors in possession, hereby move this Court for entry of an order pursuant to Federal Rule of Bankruptcy Procedure 1015(b) authorizing the joint administration of the following related chapter 11 cases which were filed with this Court concurrently:

A.   *In re Ashley I, LLC*, Case No. 16-00559-dd; and

B.   *In re Ashley II of Charleston, LLC*, Case No. 16-00560-dd.

In support of the Motion, the Debtors respectfully represent as follows:

**Jurisdiction and Venue**

1. On February 8, 2016 the Debtors voluntarily filed simultaneous Chapter 11 bankruptcies under Title 11 of the United States Bankruptcy Code.

2. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C.

§1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). The statutory predicate for the relief sought herein is Bankruptcy Rule 1015(b).

## Background

3. Ashley I is a South Carolina Limited Liability Company with substantially all of its assets consisting of real property located in Charleston County, South Carolina. Ashley I is owned 100% by Cherokee Ashley, LLC ("Cherokee") and managed by Prodel, LLC ("Prodel").

4. Ashley II is a South Carolina Limited Liability Company with substantially all of its assets consisting of real property located in Charleston County, South Carolina. Ashley II is also owned 100% by Cherokee and managed by Prodel.

5. The Debtors are single asset real estate entities that began acquiring real estate in 2002 for the purpose of developing a multi-use real estate development as a proposed urban infill project along the Ashley River in the Neck area of Charleston and North Charleston, South Carolina. The Debtors' current real property holdings consist of approximately 182 acres, composed of roughly 134 acres of highland and roughly 48 acres of marsh along the Ashley River north of Wagener Terrace and west of I-26.

6. For many years, dating back to the 19th century, the Neck was an industrial area that included phosphate fertilizer plants, lumber treatment plants, chemical plants, and the like. The extensive uses of contaminants on the Neck caused its lands and water to become contaminated, to the extent that several tracts of land in the Neck were designated "Superfund Sites" by the United States Environmental Protection Agency ("EPA").

7. The Debtors intended to acquire and remediate lands on the Neck, including those designated as Superfund Sites, and to develop a mixed-use community to serve as a model for

urban redevelopment nationwide. The Debtors acquired the land and they began the planning and re-zoning process.

8. Initially, the City of Charleston issued bonds to finance the infrastructure improvements for the project and funded approximately $15.6 million dollars in infrastructure improvements.

9. Prior to the recession of 2008, the Debtors' investments in the development exceeded $50,000,000, funds which were used to acquire the land and operate the larger development plan.

10. As part of its efforts, Ashley was actively involved in remediation of four (4) CERCLA sites and sixteen (16) additional South Carolina Voluntary Cleanup Contract sites in the Charleston neck area. Ashley had planned to utilize recent amendments to CERCLA, the Small Business Liability Relief and Brownfields Revitalization Act of 1998, to remediate and redevelop the contaminated land, and to recover the costs of clean up from the parties responsible for the contamination. Ashley brought environmental management and technical expertise, assisted in the cleanup of several sites, performed actual cleanup in some instances, and, with regard to a large waterfront tract discussed below, filed an action against other responsible parties under CERCLA to seek judicial assistance in requiring the prior polluters to contribute towards the ultimate remediation of the properties.

11. The Columbia Nitrogen Site ("*Columbia Nitrogen Parcel*"), which makes up approximately 33 acres of the real property and is owned by Ashley II, is the only parcel where Ashley was unable to secure former owners or operators' assistance with remediation prior to acquisition. The EPA previously designated the former Columbia Nitrogen Parcel, as the Columbia Nitrogen Superfund Site, adjacent to the Ashley River ("the Site"). Ashley owns 30.67 acres of the

3

Site, Robin W. Hood, II owns two acres, which are leased to Robin Hood Container Express ("*RHCE*"); and a roadway or road right-of-way over 1.28 acres of the Site is owned by the City of Charleston. Debtors' ownership of the Columbia Nitrogen Parcel has spawned years of both federal and state court litigation that remains ongoing at the Petition Date.

12. The primary secured creditor of the Debtors was Bank of America, whose successor in interest is Magnolia/ARC Lender, LLC ("MARC") who asserts a claim in the amount of $18,638,332.65. As the Debtors' pre-petition lender, MARC asserts that it holds properly perfected, first priority mortgages and security interests in and to substantially all of Debtors' assets, principally consisting of mortgages on certain real property owned by Debtors and a security interest in all or substantially all of Debtors' personal property. There are unencumbered funds of $337,324 presently held in escrow to which MARC's lien does not attach, as shown on Ashley II's Schedule A/B Question 74. Additionally, the EPA asserts a federal lien against Ashley II's Columbia Nitrogen Parcel in the amount of approximately $3.7 Million, and there are claims asserted by trade vendors and responsible parties that have incurred environmental costs related to Debtors' properties.

13. The pre-petition environmental litigation halted the Debtors' ability to fund further cleanup and development of the Ashley I and Ashley II properties, and the Debtors now seek chapter 11 protection in order to seek court approved sales of their properties to ensure future cleanup and development of these properties to the great benefit of the Charleston community.

**RELIEF REQUESTED**

14. By this Motion, the Debtors respectfully request the entry of an order authorizing the joint administration of their chapter 11 cases. The Debtors request that Ashley I's case (Case No. 16-00559-dd) be treated as the lead case in these matters.

4

15. This Court may order the joint administration of the estates of a debtor and an affiliate. Federal Rule of Bankruptcy Procedure 1015(b)[1] provides, in relevant part, "If ... two or more petitions are pending in the same court by...a debtor and an affiliate, the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b).

16. The Debtors are affiliates and insiders of one another as those terms are defined in §101 of the Bankruptcy Code and as used in Rule 1015(b), because they are both 100% owned by Cherokee and managed by Prodel.

17. The rights of creditors of each of the debtors will not be adversely affected by joint administration of these cases. Joint administration will not affect substantive rights. To the extent that proofs of claim are required to be filed, each creditor shall be entitled to file a claim against the particular estate that is indebted to such creditor. Supervision of the administrative aspects of chapter 11 cases by this Court and the Office of the United States Trustee will be simplified.

18. As a part of the joint administration sought in this matter, the Debtors seek authorization for bankruptcy counsel to file fee applications and to charge fees as though Ashley I and Ashley II are one and the same. Fees would only be paid upon order of the Court.

19. The Debtors do not seek substantive consolidation in this Motion.

20. Because substantial additional administrative costs could be incurred between the filing date of this motion and the hearing date if this motion were scheduled according to normal procedures, the Debtors request an emergency hearing on this Motion.

WHEREFORE, Debtors respectfully request that this Court enter an Order of joint administration, and for such other and further relief as this Court may deem just and proper.

---

[1] Further reference to the Federal Rules of Bankruptcy Procedure will be by rule number only.

RESPECTFULLY SUBMITTED on this the 8th day of February 2016 at Columbia, South Carolina.

                              MCCARTHY LAW FIRM, LLC

By:    /s/W. Harrison Penn
        G. William McCarthy, Jr., I.D.#2762
        Daniel J. Reynolds, Jr., I.D.#9232
        W. Harrison Penn, I.D.#11164
        *Attorneys for the Debtors*
        1517 Laurel Street
        P.O. Box 11332
        Columbia, SC 29201-1332
        (803) 771-8836
        (803) 765-6960 (fax)
        hpenn@mccarthy-lawfirm.com