**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Ashley I, LLC,<br><br>Debtor. | Case No. 16-00559-dd<br><br>Chapter 11 |
| In re:<br><br>Ashley II of Charleston, LLC,<br><br>Debtor. | Case No. 16-00560-dd<br><br>Chapter 11 |

**EXPEDITED MOTION FOR ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS OF THE DEBTOR AND GRANTING PROTECTIONS TO THE PROPOSED PURCHASER AND MEMORANDUM IN SUPPORT**

Ashley I, LLC ("Ashley") and Ashley II of Charleston, LLC ("Ashley II") (collectively, the "Debtors" or "Sellers"), by and through their undersigned counsel, hereby move the court pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 6004, for an order approving bidding procedures in connection with the proposed sale of certain of the Debtors' assets to Magnolia/ARC Lender, LLC, or its assigns or designee ("Purchaser" or "MARC"), for a purchase price of approximately $16,225,000,[1] which consists of $1,750,000 in cash paid within ten (10) days of the date of the Final Order Approving Sale, and a credit bid in the amount of $14,000,000, plus satisfaction of the Debtor in Possession Loan made by MARC to the Debtors in the estimated amount of $475,000.00 (the "Purchase Price"). In connection with its acquisition of the assets under the Term Sheet, the Purchaser has also set forth a procedure by which it may spend up to $25,000,000 to mitigate past environmental

---

[1] Based upon the Debtors' use of the full $475,000 Debtor in Possession Loan.

1

contamination of portions of the properties that are the subject of this Motion. Concurrent with the filing of this motion, the Debtors filed a Motion for Order Authorizing: (1) The Sale of Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances, and Other Interests Pursuant to 11 U.S.C. § 363; and (2) Authorizing the Assumption and Assignment of Executory Contracts Pursuant to 11 U.S.C. §365 ("Sale Motion"). The assets proposed to be sold to Purchaser are all of the Debtors' real property, excluding the Columbia Nitrogen Parcel owned by Ashley II as more fully described in the Term Sheet (the "Term Sheet") attached to the Sale Motion as **Exhibit A**.[2] The assets being sold to Purchaser in the Sale Motion shall, hereinafter, be referred to as the "Purchased Assets."

Though the Sale Motion calls for proceeds of the proposed sale to be held pending further order of this Court, the Debtors represent that the proposed sale, if approved, will essentially allow the Debtors to pay the majority of their secured debt owed to MARC and provide funds for distributions to other third party creditors, including trade vendors, the Environmental Protection Agency, and other responsible parties that have incurred costs as set forth in the Debtors' ongoing environmental litigation. MARC, as the Debtors' primary secured creditor, has agreed to waive any claim to the cash components of its proposed purchase plus any additional amounts realized in excess of the initial Purchase Price (other than the Reimbursement Fee described below) resulting from competitive bids.

In an effort to maximize the value of their estates for the benefit of creditors, the Debtors have required that the sale of the Purchased Assets to the Purchaser remain subject to higher or otherwise better offers, and the Purchaser has required as a condition of its offer certain bid protections. In order to facilitate the orderly sale of the Purchased Assets, the Debtors wish to establish procedures under which competing bidders may bid and may fully understand the procedures governing the bidding process. Accordingly, the Debtors hereby seek entry of an order: (i) establishing bidding and other sale procedures for the solicitation of higher or otherwise better offers; and (ii) granting protections to the Purchaser in the event it is not the successful purchaser. In support of this motion ("Motion"), Debtors would show as follows:

---

[2] The Term Sheet will be substituted with an Asset Purchase Agreement within fourteen (14) days of the filing of the Sale Motion.

**Background**

1. The Debtors filed its voluntary petitions for relief under chapter 11 of the Bankruptcy Code on February 8, 2016 (the "Petition Date"). The Debtors are operating their businesses and managing their assets as debtors in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors are single asset real estate entities that began acquiring real estate in 2002 for the purpose of developing a multi-use real estate development as a proposed urban infill project along the Ashley River in the Neck area of Charleston and North Charleston, South Carolina. The Debtors' current real property holdings consist of approximately 182 acres, composed of roughly 134 acres of highland and roughly 48 acres of marsh along the Ashley River north of Wagener Terrace and west of I-26.

3. For many years, dating back to the 19th century, the Neck was an industrial area that included phosphate fertilizer plants, lumber treatment plants, chemical plants, and the like. The extensive uses of contaminants on the Neck caused its lands and water to become contaminated, to the extent that several tracts of land in the Neck were designated "Superfund Sites" by the United States Environmental Protection Agency ("EPA").

4. The Debtors intended to acquire and remediate lands on the Neck, including those designated as Superfund Sites, and to develop a mixed-use community to serve as a model for urban redevelopment nationwide. The Debtors acquired the land and they began the planning and re-zoning process.

5. Initially, the City of Charleston issued bonds to finance the infrastructure improvements for the project and funded approximately $15.6 million dollars in infrastructure improvements.

6. Prior to the recession of 2008, the Debtors' investments in the development exceeded $50,000,000, funds which were used to acquire the land and operate the larger development plan.

7. As part of its efforts, Ashley was actively involved in remediation of four (4) CERCLA sites and sixteen (16) additional South Carolina Voluntary Cleanup Contract sites in the Charleston neck area. Ashley had planned to utilize recent amendments to CERCLA, the Small Business Liability Relief and Brownfields Revitalization Act of 1998, to remediate and

redevelop the contaminated land, and to recover the costs of clean up from the parties responsible for the contamination. Ashley brought environmental management and technical expertise, assisted in the cleanup of several sites, performed actual cleanup in some instances, and, with regard to a large waterfront tract discussed below, filed an action against other responsible parties under CERCLA to seek judicial assistance in requiring the prior polluters to contribute towards the ultimate remediation of the properties.

8. The Columbia Nitrogen Site ("*Columbia Nitrogen Parcel*"), which makes up approximately 33 acres of the real property and is owned by Ashley II, is the only parcel where Ashley was unable to secure former owners or operators' assistance with remediation prior to acquisition. The EPA previously designated the former Columbia Nitrogen Parcel, as the Columbia Nitrogen Superfund Site, adjacent to the Ashley River ("the Site"). Ashley owns 30.67 acres of the Site, Robin W. Hood, II owns two acres, which are leased to Robin Hood Container Express ("*RHCE*"); and a roadway or road right-of-way over 1.28 acres of the Site is owned by the City of Charleston. Debtors' ownership of the Columbia Nitrogen Parcel has spawned years of both federal and state court litigation that remains ongoing at the Petition Date.

9. The primary secured creditor of the Debtors was Bank of America, whose successor in interest is Magnolia/ARC Lender, LLC ("MARC") who asserts a claim in the amount of $18,638,332.65. As the Debtors' pre-petition lender, MARC asserts that it holds properly perfected, first priority mortgages and security interests in and to substantially all of Debtors' assets, principally consisting of mortgages on certain real property owned by Debtors and a security interest in all or substantially all of Debtors' personal property. There are unencumbered funds of $337,324 presently held in escrow to which MARC's lien does not attach, as shown on Ashley II's Schedule A/B Question 74. Additionally, the EPA asserts a federal lien against Ashley II's Columbia Nitrogen Parcel in the amount of approximately $3.7 Million, and there are claims asserted by trade vendors and responsible parties that have incurred environmental costs related to Debtors' properties.

10. Unfortunately, the pre-petition environmental litigation halted the Debtors' ability to fund further cleanup and development of the Ashley I and Ashley II properties, and the Debtors now seek chapter 11 protection in order to seek court approved sales of their properties to ensure future cleanup and development of these properties to the great benefit of

the Charleston community.

11. Upon filing for chapter 11, the Debtors filed the Sale Motion seeking to sell the Purchased Assets to Purchaser.

## Relief Sought

12. The Debtors' assets consist primarily of approximately 182 acres of real property, composed of approximately 134 acres of highland and approximately 48 acres of marsh along the Ashley River north of Wagener Terrace and west of 1-26 on peninsular Charleston.

13. The proposed sale is a sale of substantially all of the Debtor's real estate assets, except the Columbia Nitrogen Parcel as more fully described in the Term Sheet attached as **Exhibit A** to the Sale Motion. The Term Sheet and any subsequently filed Asset Purchase Agreement ("APA") are specifically incorporated herein by reference. The Columbia Nitrogen Parcel will be sold at a later time, with notice to all creditors and upon approval of the Bankruptcy Court.

14. The proposed sale to Purchaser does not include the sale of Ashley II's Columbia Nitrogen Parcel or any of the Debtors' personal property or any avoidance claims under Chapter 5 of the Bankruptcy Code. The assets excluded from the sale shall, hereinafter, be referred to as the "Excluded Assets."

15. The Debtors have proposed to hire a sales and marketing agent to market the Purchased Assets in this matter for a period of approximately 120 days. The Debtors are hereby requesting that the Court set a date for an auction and sale hearing (the "Sale Hearing") to occur approximately 145 days from the filing of the Sale Motion and this Bid Procedures Motion, which would be a date in mid- to late-June of 2016.

16. The Debtor requests that the Court enter an order establishing bid procedures (the "Bid Procedures Order") in the event Debtor receives a competing bid for the Purchased Assets as follows:

    a. Any bid from any persons or entity other than the Purchaser to purchase the Assets, in order to be a qualifying bid (a "Qualified Competing Bidder" and a "Qualified Competing Bid"), shall:

        i. be in writing and accompanied by a redlined APA outlining the

changes from the proposed Purchaser's APA;

    ii.    contain terms and conditions that are the same, or substantially similar, in all material respects to the APA, other than the identity of the bidder and the amount of the Purchase Price;

    iii.    be accompanied by a written acknowledgment and agreement that the terms of the bid are substantially similar in all material respects to the APA, except for the identity of the bidder and the Purchase Price, and that the bidder, should it be declared the winning bidder, will enter into an APA with the Debtors confirming the terms of such winning bid;

    iv.    be a cash offer that exceeds the Purchase Price by at least Seven Hundred Fifty Thousand and no/100 ($750,000);

    v.    include satisfactory evidence of the financial ability of the Qualified Competing Bidder to timely consummate the purchase for cash;

    vi.    include a deposit of Seven Hundred Fifty Thousand and no/100 ($750,000) in certified funds payable to the trust account of counsel for the Debtors; and

    vii.    be received by the Debtors' counsel, G. William McCarthy, Jr., Esq. at 1517 Laurel Street, Columbia, SC or at bmmcarthy@mccarthy-lawfirm.com, and the Purchaser's counsel, Julio E. Mendoza, Jr., Esq. at 1230 Main Street, Suite 700, Columbia, SC 29201 or at rmendoza@nexsenpruet.com, no later than the close of business seven days prior to the Sale Hearing, which the Court will specifically set forth as a date certain in the Bid Procedures Order.

    b.    Upon timely receipt of a Qualified Competing Bid, the Debtors will conduct an auction (the "Auction") for the Purchased Assets at a location to be determined and a time to be announced well in advance of the auction. The Debtors will use their best business judgment regarding any submitted bids and may consult with the secured creditors and other parties in interest to determine if any such bids constitute a Qualified Competing Bid as set forth herein. The Debtors shall report to the Court two (2) business days before the hearing on the Sale Motion (the "Sale

Hearing") if they will not consider a particular bid as a Qualified Competing Bid. The Debtors and any interested parties with standing shall have the right to object to any bid being deemed, or not being deemed, a "Qualified Competing Bid." The Court shall decide any dispute over what constitutes a "Qualified Competing Bid," and nothing in this Order shall be read to prohibit the Court from considering higher or otherwise better bids on terms that differ from the Debtors' proposed sale.

  c. Upon receipt of any Qualifying Competing Bid as described in paragraph 15(a) above, the Purchaser shall have the unconditional right to submit an "overbid" by delivering to the Debtors' counsel, no later than the beginning of the Auction, two signed copies of an amendment to the APA in which the Purchase Price set forth therein is identical to or exceeds the higher purchase price offered by the Qualified Competing Bidder pursuant to paragraph 15(a) above; by equaling or exceeding the Purchase Price of any Qualified Competing Bidder, the Purchaser creates at least an additional Two Hundred and Seventy Five Thousand Dollars ($275,000) cash for the Debtors' estates because the Debtors will not have to pay the $275,000 Reimbursement Fee set out in more detail below. <u>The Purchaser may submit an "overbid" as set forth above and may submit overbids at the auction until a successful bidder is announced, however any and all higher bids by Purchaser above the initial Purchase Price set forth in the Sale Motion shall be made by increasing the cash component of their bid and shall not include any increases in the credit bid portion of the Purchase Price</u>. Any higher bid of the Purchaser at or prior to the Auction shall be subject to the Debtors' acceptance of still higher and better bids submitted during the Auction in compliance with this section; provided, however, that such higher and better bid shall equal the sum of: (i) the Purchase Price under the amendment to the APA submitted by the Purchaser; plus (ii) an additional amount of at least Five Hundred Thousand and no/100 ($500,000) (a "Yet Higher Offer"). In the event of Yet Higher Offers, Purchaser shall have the continuing right to equal or exceed the Yet Higher Offer of any Qualified Competing Bidder and each Qualified Competing Bidder shall have the continuing right to continue to submit an overbid in minimum amounts of at least $500,000

more than the previous bid, unless and until such time as the Purchaser or any other Qualified Competing Bidder elects not to make a further overbid and the Auction is concluded.

  d. In the event that any person or entity acquires the Purchased Assets other than due to a breach of the APA by the Purchaser, the Purchaser shall be entitled to payment from the sale proceeds of the Purchased Assets of (1) an amount to reimburse the Purchaser for costs incurred by the Purchaser (subject to appropriate documentation and approval as set forth below) in presenting and proceeding with its offer and the proposed transactions under the APA (the "Reimbursement Fee"), which Reimbursement Fee shall not exceed $275,000.00 unless otherwise approved by the Court, and which payment shall be made upon Sale Closing to the successful bidder for the Purchased Assets. The Reimbursement Fee shall only be owed to Purchaser if a party other than Purchaser successfully purchases the Purchased Assets. This Reimbursement Fee shall serve as reimbursement for the Purchaser's reasonable expenses incurred in entering into the APA and for the benefit to the Debtors that the APA created in attracting other bids over and above the Purchase Price, which benefit the Debtors acknowledge.

  e. In the event that a Qualified Competing Bid is received, the Debtors will request the Court to approve a "back up" bid. If the successful bidder fails to close and is unable to pay the bid price within ten (10) business days of the entry of a final order approving the sale, the successful bidder shall forfeit its deposit made pursuant to paragraph 15(a)(vi) above, and the Debtors shall close the sale of the Assets to the "back up" bidder without the necessity of obtaining another order from this Court. If any "back up" bidder fails to close and is unable to pay the bid price within ten (10) business days of notice of the higher bidder's failure to close, then such "back up" bidder shall forfeit its deposit made pursuant to paragraph 15(a)(vi) above.

  f. The deposit made by any Qualified Competing Bidder, pursuant to paragraph 15(a)(vi) above, who is not either the successful purchaser of the Purchased Assets or a "back up bidder" shall be returned to such Qualified

8

Competing Bidder within three (3) business days after the Sale Hearing. The deposit made by any Qualified Competing Bidder that is designated as a "back up" bidder shall be returned to such Qualified Competing Bidder within three (3) business days after the Sale Closing to the winning bidder.

g. Acceptance by the Debtors of a Qualified Competing Bid as a winning bid or a back-up bid shall, in all respects, be subject to the entry of a final sale order by the Bankruptcy Court authorizing the Debtors to consummate the sale.

h. If the Debtors accept Qualified Competing Bids as the winning bid or back-up bid, those Qualified Competing Bids shall remain open and irrevocable through Sale Closing.

i. The Bankruptcy Court shall resolve any dispute regarding any aspect of the foregoing bidding procedures.

17. The Purchaser has expended, and will further expend, a significant amount of time and costs, including but not limited to legal fees, in negotiating and finalizing the proposed sale and APA. Regardless of whether the Purchaser is the winning bidder, these negotiations and efforts will have enhanced the estate and increased the return to creditors of the estate. In recognition of that enhancement, the proposed sale provides that in the event the Purchaser is not the winning bidder it shall be entitled to the Reimbursement Fee as described in paragraph 15(d) above. However, the Purchaser shall not be entitled to such Reimbursement Fee in the event that the failure to consummate the transactions contemplated by the APA is a direct result of a breach of the APA by the Purchaser and its failure to cure such breach after written notice thereof.

18. The Debtors seek entry of an order establishing the above-described bidding procedures and approving the Reimbursement Fee. In marketing assets, debtors often employ buyer protections in order to encourage the making of other purchase offers. These protections are "important tools to encourage bidding and to maximize the value of the debtor s assets." In re Integrated Resources. Inc, 147 B.R. 650, 659 (S.D.N.Y. 1992). Establishment of the bidding procedure will insure an orderly and fair mechanism for evaluating competing offers and will allow competing bidders an opportunity to increase their bid, thereby maximizing the value of the estate. See In Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores,

Inc.), 107 F.3d 558 (8th Cir. 1997)(stating that a bidding procedure avoids confusion and ensures that a sale is conducted according to the bidders' reasonable expectations); In re Gould, 977 F.2d 1038 (7th Cir. 1992)(holding that adoption of detailed bidding procedures was within the court's discretion).

19. Approval of the Reimbursement Fee under the terms and conditions set forth above is a fair and equitable compensation to the Purchaser in the event that another Qualified Competing Bidder becomes the winning bidder and the sale to such other Qualified Competing Bidder closes. In the present case, the maximum amount requested by the Purchaser as the Reimbursement Fee is less than 1.75% of the bid. Courts have routinely approved such reimbursement fees to proposed buyers who were not the winning bidders. See, e.g., In re Integrated Resources, Inc., 135 B.R. 746, aff'd 147 B.R. 650, 662 (S.D.N.Y. 1992)(discussing approval of expense reimbursement agreements). See also In re Briar's Creek Golf Club, LLC d/b/a The Golf Club at Briar's Creek, Case No. 15-00712-jw (Bankr. D.S.C. Feb. 19, 2015); In re Goe. W. Park Seed Co., Inc., Case No. 10-02341-jw (Banrk. D.S.C. July 10, 2010); In re Daufuskie Island Properties, LLC, Case No. 09-00389-jw (Bankr. D.S.C. October 29, 2009); In re PWG USA, LP, Case No. 07-02736-dd (Bankr. D.S.C. July 30, 2007); and In re Georgetown Steel Company, LLC, Case No. 03-13156-jw (Bankr. D.S.C. May 13, 2004).

20. The Debtors further request a provision in the Bid Procedures Order that if the Debtors, in the exercise of their best business judgment, reject any bid as noncompliant because bidder has failed to timely demonstrate the ability to fund and close on its bid, then the Debtors or other interested parties may file an application with the Court seeking sanctions against such non-compliant bidder. The Debtors propose that if, after notice and a hearing, the Court determines that the Debtors or other party were justified in rejecting such bid and that sanctions are appropriate, then the Court may award appropriate sanctions against a noncompliant bidder who fails to timely demonstrate the ability to fund and close on its bid. Finally, the Debtors request authority to retain any deposit by the allegedly non-compliant bidder pursuant to Paragraph 15(a)(vi) above pending a determination of sanctions by the Court.

WHEREFORE, having set forth the basis for its Motion, the Debtors request that the Court enter an order approving the Motion and provide such other and further relief as the court may deem necessary and appropriate.

Date: February 8, 2016
      Columbia, SC

McCARTHY LAW FIRM, LLC.

By: /s/Daniel J. Reynolds, Jr.
G. William McCarthy, Jr., I.D.#2762
Daniel J. Reynolds, Jr., I.D.#9232
W. Harrison Penn, I.D.#11164
Attorneys for the Debtors
1517 Laurel Street
P.O. Box 11332
Columbia, SC 29201-1332
(803) 771-8836 (Phone)
(803) 753-6960 (Fax)
dreynolds@mccarthy-lawfirm.com