# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Ashley I, LLC,<br><br>　　　　　　　　　　Debtor. | Case No. 16-00559-dd<br>Chapter 11 |
| In re :<br><br>Ashley II of Charleston, LLC,<br><br>　　　　　　　　　　Debtor. | Case No. 16-00560-dd<br>Chapter 11 |

**OBJECTION OF UNITED STATES TRUSTEE TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER: (I) APPROVING POST-PETITION
FINANCING; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS; AND
(III) APPROVING PRE-PETITION SUPPORT AGREEMENT**

　　　　The United States Trustee (the "UST") objects to the Debtors' Motion filed on February 8, 2016 seeking (a) approval of post-petition financing; (b) granting of liens and providing superpriority administrative expense status to the lender; and (c) approving the pre-petition support agreement between the lender and the Debtors (the "DIP Motion"). The DIP Motion seeks authorization for the Debtors to obtain secured post-petition financing and other extensions of credit for up to $475,000 on a priming lien and superpriority basis (the "DIP Facility") pursuant to a post-petition loan and security agreement between the Debtors and Magnolia/ARC Lender, LLC ("MARC"). The Motion further seeks the Court's approval of the terms of a pre-petition support agreement (the "Support Agreement") between the Debtors and MARC. The

1

UST files this objection pursuant to the authority granted to her by 28 U.S.C. § 586 and 11 U.S.C. § 307.[1]  The grounds for this objection are:

1. **Relief Sought Exceeds Interim Requirements:**

It is not clear from the DIP Motion or the Proposed DIP Order how much the Debtors seek to have approved during the interim period.  The Proposed DIP Order provides that "[t]he DIP Lender shall make an initial advance under the DIP Facility in the amount of $150,000.00, for the Debtors' use in payment of unauthorized expenses under the Budget, approved Professional Expenses and the U.S. Trustee Fees.  The amount authorized for DIP Facility advances under the Interim Order shall be credited against, and treated as part of, the $150,000 initial advance."  See Proposed DIP Order at ¶ 8(b).  The Support Agreement provides that in addition to prepetition loan advances, "[t]he advances to the Debtors under the DIP Loan will not exceed $550,000, which amount includes $75,000.00 for the retainers the Debtors are providing to their bankruptcy professionals, and upon entry of an interim order authorizing the DIP Loan, Lender will advance $150,000 (in addition to the $75,000 for the retainers of the Debtors' professionals) to the Debtors as an initial funding, which $150,000 will be held by the Debtors for use consistent with the orders authorizing the DIP Loan."  See Support Agreement at ¶ 3.  Not only is it not clear how much the Debtors are seeking to borrow on an interim – or a final basis – but also the budget which is attached to the DIP Motion contemplates payments to professionals who are yet to be employed as well as taxes that do not appear to be due until the year 2017.  The UST objects to any payments on an interim basis that are not absolutely necessary for the continuation of the Debtors.

---

[1] Further reference to Title 11 U.S.C. § 101, et. seq. will be by section number only.

**2. Carve-Out Should Include Fees of Any Committee**

The DIP Motion and Proposed DIP Order provide that the DIP liens granted to MARC shall be subject and subordinate to the payment of the following: "(a) unpaid Professional Expenses of Professionals, to the extent incurred prior to or after the occurrence of a Carve-Out Event . . . not to exceed in the aggregate $475,000; and (ii) accrued and unpaid quarterly fees to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930." See Proposed DIP Order at ¶8, p. 10.  The term "Professional" is defined in the Proposed DIP Order as including only professionals retained by the Debtors.  The UST objects on the ground that the Carve-Out should be expanded to include the expenses of any committee that may be appointed by the UST pursuant to 11 U.S.C. § 1102.

**3. Carve-Out Should Include Expenses of Chapter 7 Trustee**

The UST also objects on the ground that the Carve-Out should be expanded to include the expenses of a Chapter 7 Trustee should these cases be converted at some future time. Local Bankruptcy Rule 4001-4(2)(B) specifically provides that a provision that will normally be approved is, among others, one "securing any post-petition diminution in the value of the secured party's collateral with a lien on post-petition collateral of the same type as the secured party had pre-petition, *if such lien is subordinated to the compensation and expense reimbursement (excluding professional fees) allowed to any trustee thereafter appointed in the case*." See LBR 4001-4(2)(B).  Accordingly, the UST requests that the Carve-Out also include a carve-out for Chapter 7 administrative fees and expenses in an amount not less than $150,000.00.

**4. DIP Liens Should Carve-Out the Fund Held in Escrow**

Ashley II of Charleston, LLC previously sold real property that was not under mortgage to MARC, and $337,324.00 of sale proceeds from such sale is now being held in escrow in the United States District Court for the District of South Carolina.  The DIP Motion provides that the

3

funds are being held for the intended use of payment of unsecured creditors.  See DIP Motion at ¶ 13.  The UST requests that the Proposed DIP Order be clarified to provide that these funds that are being held in escrow and on which MARC does not have a security interest are also carved-out from the DIP Liens.

5. **Review of Lenders' Fees**

The DIP Loan Agreement provides that the Debtors shall reimburse MARC for all legal, accounting, appraisal and other fees and expenses incurred by MARC in connection with respect to various things.  The UST requests that MARC provide the UST and any other party in interest who so requests with copies of the invoices for any such fees upon 10-days notice.

6. **Non-Debtor Third Party Releases Should Not Be Approved as Part of the Support Agreement**

The Support Agreement for which the DIP Motion also seeks approval provides as follows:

> Upon the execution of this Agreement, (a) the Debtors, and each of their officers, directors, shareholders, partners, members, managers, direct and indirect parents, subsidiaries and affiliated companies, specifically including Cherokee Investment Partners III, L.P. and Cherokee Investment Partners III Parallel Fund, L.P., and their respective heirs, personal representatives, successors and assigns (each such Person, in such capacity, a "Released Person") are hereby released from personal liability for indebtedness under the Loan and released from any and all claims, demands, obligations, liabilities, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, judgments, debts, controversies, damages, costs, losses and expenses, of every type, kind, nature, description or character (collectively and individually, the "Claims"), and irrespective of how, why or by reason of what facts, whether heretofore or now existing, or which Claims could, might, or may now or hereafter be claimed to exist, of whatever kind, name or nature, whether known, unknown, past or present, latent or patent, suspected or unsuspected, anticipated or unanticipated, liquidated or unliquidated, each as if they were fully set forth herein at length, which may in any way arise out of, are connected with or relate to the Mortgaged Property or the Baker Hospital Property . . .

4

<u>See</u> Support Agreement at ¶ 7. The UST objects to any non-debtor third party releases set forth in the Support Agreement because the Debtors have not provided any legal basis for such releases. Any such releases can be considered as part of plan confirmation.

7. **<u>Section 506(c) Waiver</u>**

Paragraph 5 of the Proposed DIP Order provides that "[a]ll DIP Obligations shall have administrative priority in accordance with, and shall constitute an allowed superpriority claim (the "DIP Superpriority Claim") pursuant to § 364(c)(1) of the Bankruptcy Code over all other administrative expenses in the Chapter 11 Cases of the kind specified in, or ordered pursuant to §§ 105, 326, 328, 330, 331, 365, 503(c), 503(b), 506(e) [sic], 507(b), 546(c), 546(d), 726 (to the extent permitted by law) . . ." <u>See</u> Proposed Dip Order at ¶ 5, p. 10. To the extent that this clause is intended as a waiver of 11 U.S.C. § 506(c) or limits the administrative expenses and fees of a future Chapter 7 trustee, the UST requests that the Proposed DIP Order specify that (a) the § 506(c) waiver is effective only during the period in which the Debtors are authorized to use cash collateral or borrow funds (<u>see</u> LBR 4001-4(b)(1)(B)) and (b) the Carve-Out includes a carve-out for administrative expenses and fees of a future Chapter 7 Trustee, as set forth in more detail above.

8. **<u>No Entitlement to Relief from Stay Absent Further Court Order</u>**

Paragraph 13(a) of the Proposed DIP Order provides that "[u]pon or after the occurrence of an Event of Default under the DIP Loan Agreement, the DIP Lender shall be fully authorized to terminate further advances under the DIP Facility and to demand payment of all DIP Obligations." Language should be added to the Proposed DIP Order which clarifies that MARC is not entitled to relief of the automatic stay upon the occurrence of any default absent further order of the Court.

9. **Timing of Repayments to Secured Lender**

The DIP Loan Agreement at ¶ 2.7 provides that "[a]ll of the Obligations [defined as all indebtedness, obligations and liabilities at any time incurred by the Debtors to MARC after the Petition Date] shall be payable in accordance with the terms of this Agreement and any Post-Petition Note, without defense, offset or counterclaim and in immediately available funds upon a sale of the Collateral." Paragraph 2.8 adds that "[a]ll outstanding principal of the Post-Petition Loan and accrued Interest shall be due and payable upon the sale of Collateral securing the Post-Petition Loan, or on the Commitment Termination Date." The UST requests clarification that no payments to MARC will be made unless they are made pursuant to the terms of a confirmed plan or court order.

10. **Requirements of Section 364**

Section 364 requires that the Debtors demonstrate that they are unable to obtain an unsecured loan from any other source. The DIP Motion provides that "[g]iven their current financial condition, financing arrangements, and capital structure, the Debtors and their advisors have determined that the Debtors are not viably able to obtain financing from sources other than [MARC] on terms more favorable than the DIP Facility." See Proposed DIP Order at p. 5, (iv). The DIP Motion, however, is silent as to what efforts the Debtors have undertaken to find any other loan on a more favorable basis.

11. **Miscellaneous**

Due to the early nature of the pleadings and the cases, the UST reserves her rights to raise objections to the relief requested at the hearing. The UST objects to all relief which is not immediately required to avoid irreparable harm and which does not benefit the estate.

The UST asks the Court to deny the relief sought by the Debtors, unless the Debtors can adequately address each of these objections and any additional objections raised at the hearing. The UST asks the Court to grant to the UST such other relief as is appropriate.

JUDY A. ROBBINS
UNITED STATES TRUSTEE
REGION FOUR

By: /s/ Elisabetta G. Gasparini
Elisabetta G. Gasparini, Id. 11548
Trial Attorney
1835 Assembly Street, Ste. 953
Columbia, SC 29201
(803) 765-5227
(803) 765-5260 (facsimile)
Elisabetta.g.gasparini@usdoj.gov

Date:   2/10/16

## CERTIFICATE OF SERVICE

I, Elisabetta G. Gasparini, do hereby certify that on February 10, 2016, I served the below-named documents upon the parties listed below by electronic mail.

**OBJECTION OF UNITED STATES TRUSTEE TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER: (I) APPROVING POST-PETITION
FINANCING; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS; AND
(III) APPROVING PRE-PETITION SUPPORT AGREEMENT**

by e-mailing copies on the following parties:

G. William McCarthy, Jr., Esq
Harrison Penn, Esq.
Julio E. Mendoza, Esq.

By: /s/ Elisabetta G. Gasparini
Elisabetta G. Gasparini, Id. 11548
Trial Attorney
1835 Assembly Street, Ste. 953
Columbia, SC 29201
(803) 765-5227
(803) 765-5260 (facsimile)
Elisabetta.g.gasparini@usdoj.gov

Date:   2/10/16