**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: | Chapter 11 |
| Ashley I, LLC and Ashley II of Charleston, LLC,[1] | Case No. 16-00559-dd |
| Debtors. | Jointly Administered |

**ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES**
**IN CONNECTION WITH THE SALE OF ASSETS OF THE DEBTORS**
**AND GRANTING PROTECTIONS TO THE PROPOSED PURCHASER**

THIS MATTER came before the Court on the Expedited Motion of Ashley I, LLC ("Ashley") and Ashley II of Charleston, LLC ("Ashley II") (collectively, the "Debtors") for Order Establishing Bidding and Other Procedures in Connection with the Sale of Assets of the Debtors and Granting Protections to the Proposed Purchaser ("Bid Procedures Motion"), filed February 8, 2016. The Court has yet to consider Debtors' motion to sell, and Debtors have not yet filed an application to employ a broker. Magnolia/ARC Lender, LLC, or its assigns or designees ("MARC") has offered to purchase the Purchased Assets (as defined below) free and clear of liens, claims, and encumbrances for a purchase price of approximately $16,225,000,[2] which consists of $1,750,000 in cash paid within ten (10) days of the date of the Final Order Approving Sale, and a credit bid in the amount of $14,000,000,[3] plus satisfaction of the Debtor in Possession Loan, if any, made by MARC to Debtors in the estimated amount of $475,000.00 (the "Purchase Price"). MARC has also set forth a procedure by which it may spend up to $25,000,000 to mitigate past environmental contamination of portions of the properties that are the subject of this Motion. The assets proposed to be purchased by MARC are all of Debtors' real property, excluding the Columbia Nitrogen Parcel owned by Ashley II as more fully

---

[1] Ashley I, LLC filed its chapter 11 petition on February 8, 2016, which is designated as Case No. 16-00559-dd in this Court; Ashley II of Charleston, LLC also filed its chapter 11 petition on February 8, 2016, which is designated as Case No. 16-00560-dd in this Court. The Court has entered an order that these cases be jointly administered, with Case No. 16-00559-dd being the lead case.

[2] Based upon Debtors' use of the full $475,000 Debtor in Possession Loan, if any.

[3] The Court has not made a determination of the extent, validity or priority of MARC's secured claim. The availability of a credit bid is contingent upon the finding of an allowed first priority secured claim.

1

described in the term sheet attached to the sale motion [Docket No. 5] (the "Purchased Assets").[4] The sale to MARC is scheduled to close within ten (10) days of the entry of a final sale order in this matter (the "Sale Closing").[5]

The Bid Procedures Motion requests entry of an order: (i) establishing bidding procedures in connection with the offer from MARC and (ii) granting certain purchase offer protections to MARC in the form of a Reimbursement Fee (as defined in more detail in paragraph 1(d) below) in the event that any person other than MARC acquires the Purchased Assets other than due to a breach of MARC's APA by MARC.

To the extent the sale motion calls for proceeds of the proposed sale to be held pending further order of this Court, Debtors have represented that the proposed sale, if approved, will essentially allow Debtors to pay the majority of their secured debt owed to MARC and provide funds for distributions to other third party creditors, including trade vendors, the Environmental Protection Agency, and other parties that have incurred costs in Debtors' ongoing environmental litigation. MARC, as Debtors' primary secured creditor, has agreed to waive any claim to the cash components of its proposed purchase plus any additional amounts realized in excess of the initial Purchase Price (other than the Reimbursement Fee described below) resulting from competitive bids.

It appearing that the proposed bidding procedures as modified by this Order are commercially reasonable and will facilitate the sale process and maximize the value of the Purchased Assets for the estate, that the Reimbursement Fee described below is appropriate, and that the relief ordered is in the best interests of the estate, it is hereby:

ORDERED, ADJUDGED and DECREED as follows:

1.  The following bidding procedures are approved:

    a.  Any bid from any persons or entity other than MARC to purchase the Purchased Assets, in order to be a qualifying bid (a "Qualified Competing Bidder" and a "Qualified Competing Bid"), shall:

        i.  be in writing and accompanied by a redlined asset purchase agreement ("APA") outlining the changes from MARC's APA;

---

[4] Debtors state that the term sheet will be substituted with an asset purchase agreement within fourteen (14) days of the filing of the sale motion. MARC's execution of an asset purchase agreement will signify acceptance of the bid procedure changes set forth in this Order.

[5] The proposed payment of sale proceeds and transfer of title to all of the Purchased Assets except the Beazer Parcel are set to occur at Sale Closing. However, the proposed transfer of title to the Beazer Parcel is scheduled to occur within sixty (60) months.

    ii. contain terms and conditions that are the same, substantially similar, or more beneficial to the estate. This provision shall not be interpreted to prevent offers for a single parcel or group or groups of parcels;

    iii. be accompanied by a written acknowledgment and agreement that the terms of the bid are substantially similar in all material respects to MARC's APA, except for the identity of the bidder and the Purchase Price, or shall specify how the bid is more beneficial to the estate. The bid must also include a proposal for remediation of environmental contamination and must state that the bidder, should it be declared the winning bidder, will enter into an APA with Debtors confirming the terms of such winning bid;

    iv. be a cash offer that exceeds the Purchase Price by at least Seven Hundred Fifty Thousand and no/100 ($750,000);

    v. include satisfactory evidence of the financial ability of the Qualified Competing Bidder to timely consummate the purchase for cash;

    vi. be received by Debtors' counsel, G. William McCarthy, Jr., Esq. at 1517 Laurel Street, Columbia, SC or at bmmcarthy@mccarthy-lawfirm.com, and MARC's counsel, Julio E. Mendoza, Jr., Esq. at 1230 Main Street, Suite 700, Columbia, SC 29201 or at rmendoza@nexsenpruet.com, by the close of business seven days prior to the hearing on the sale motion (the "Sale Hearing"); and

    vii. include a deposit of Seven Hundred Fifty Thousand and no/100 ($750,000) in certified funds payable to the trust account of counsel for Debtors.

  b. Upon timely receipt of a Qualified Competing Bid, Debtors will conduct an auction (the "Auction") for the Purchased Assets at a location to be determined and a time to be announced well in advance of the Auction. Debtors will use their best business judgment regarding any submitted bids and may consult with the secured creditors and other parties in interest to determine if any such bids constitute a Qualified Competing Bid as set forth herein. Debtors shall report to the Court two (2) business days prior to the Sale Hearing if Qualified Competing Bids have been received and if they will not consider a particular bid as a Qualified Competing Bid. Debtors and any interested parties with standing shall have the right to object to any

bid being deemed, or not being deemed, a "Qualified Competing Bid." The Court shall decide any dispute over what constitutes a "Qualified Competing Bid," and nothing in this Order shall be read to prohibit the Court from considering higher or otherwise better bids on terms that differ from Debtors' proposed sale.

    c.    MARC, and any proposed purchaser submitting a Qualified Competing Bid shall, prior to the Auction, allocate its proposed purchase price between Debtors and the parcels of land proposed to be purchased.

    d.    Upon initial receipt of any Qualifying Competing Bid as described in paragraph 1(a) above, MARC shall have the unconditional right to submit an "overbid" by delivering to Debtors' counsel, no later than the beginning of the Auction, two signed copies of an amendment to MARC's APA in which the purchase price set forth therein is identical to or exceeds the higher purchase price offered by the Qualified Competing Bidder pursuant to paragraph 1(a) above. After these initial bids, any higher bids submitted at or prior to the Auction by either MARC or other competing bidders must exceed the current bid amount by an additional amount of at least Three Hundred Thousand and no/100 ($300,000) (a "Yet Higher Offer"). All higher bids by MARC above the initial bid shall be made by increasing the cash component of their bid and shall not include any increases in the credit bid portion of the Purchase Price. Bidding in accordance with these procedures will continue until the Auction is concluded.

    e.    In the event that any person or entity acquires the Purchased Assets other than due to a breach of MARC's APA by MARC, MARC shall be entitled to payment from the sale proceeds of the Purchased Assets of (1) an amount to reimburse MARC for costs incurred by MARC (subject to appropriate documentation and approval as set forth below) in presenting and proceeding with its offer and the proposed transactions under MARC's APA (the "Reimbursement Fee"), which Reimbursement Fee shall not exceed $275,000.00, and which payment shall be made upon Sale Closing to the successful bidder for the Purchased Assets, but only after a determination of reasonableness under paragraph 3 of this Order. This Reimbursement Fee shall serve as reimbursement for MARC's reasonable expenses incurred in entering into MARC's APA and for the benefit to Debtors that MARC's APA created in attracting other bids over and above the Purchase Price, which benefit

4

Debtors have acknowledged.

      f.    In the event that a Qualified Competing Bid is received, Debtors will request the Court to approve a "back up" bid. If the successful bidder fails to close and is unable to pay the bid price within ten (10) business days of the entry of a final order approving the sale, the successful bidder shall forfeit its deposit, and Debtors shall close the sale of the Purchased Assets to the "back up" bidder without the necessity of obtaining another order from this Court. If any "back up" bidder fails to close and is unable to pay the bid price within ten (10) business days of notice of the higher bidder's failure to close, then such "back up" bidder shall forfeit its deposit.

      g.    The deposit made by any Qualified Competing Bidder, pursuant to paragraph 1(a)(vii) above, who is not either the successful purchaser of the Purchased Assets or a "back up bidder" shall be returned to such Qualified Competing Bidder within three (3) business days after the Sale Hearing. The deposit made by any Qualified Competing Bidder that is designated as a "back up" bidder shall be returned to such Qualified Competing Bidder within three (3) business days after the Sale Closing to the winning bidder.

      h.    Acceptance by Debtors of a Qualified Competing Bid as a winning bid or a back-up bid shall, in all respects, be subject to the entry of a final sale order by the Bankruptcy Court authorizing Debtors to consummate the sale.

      i.    If Debtors accept Qualified Competing Bids as the winning bid or back-up bid, those Qualified Competing Bids shall remain open and irrevocable through Sale Closing.

      j.    The Bankruptcy Court shall resolve any dispute regarding any aspect of the foregoing bidding procedures.

2.    If Debtors, in the exercise of their best business judgment, reject any bid as noncompliant because bidder has failed to timely demonstrate the ability to fund and close on its bid, then Debtors or other interested parties, within ten (10) days after the rejection of the bid submitted by the non-compliant bidder, may file an application with the Court seeking sanctions against such non-compliant bidder. If after notice and a hearing, the Court determines that Debtors or other party were justified in rejecting such bid, that the party submitting the bid was provided a copy of this Order, and that sanctions are appropriate, then the Court may award appropriate sanctions against a noncompliant bidder who fails to timely demonstrate the ability

5

to fund and close on its bid. Any agent holding a deposit from the allegedly non-compliant bidder pursuant to paragraph 1(a)(vii) above shall, upon notice of this Order, retain such deposit pending a determination of sanctions by the Court.

3. Subject to documentation and Court approval of the reasonableness of the actual amount of its expenses upon application of MARC, the Reimbursement Fee is approved.

4. Debtors have proposed to hire a sales and marketing agent, after reasonable consultation with the parties in interest, to market the Purchased Assets in this matter for a period of approximately 180 days, which period is to commence after the authorization of employment of such broker by the Bankruptcy Court. Nothing in this Order shall prevent Debtors or any party in interest from seeking a reconsideration of the bidding procedures set forth herein within twenty-one (21) days after the employment of the broker. This Order is entered at a preliminary stage of the proceedings. Debtors have not yet been advised regarding the most appropriate approach to selling and marketing the Purchased Assets. A determination of the best marketing plan by the broker employed by Debtors may necessitate modification of these bid procedures.

5. Debtors shall also serve this Order and the sale motion on all creditors and parties in interest and any other entities that have shown an interest in purchasing the Purchased Assets.

6. Debtors shall take reasonable steps to market the proposed sale and solicit higher or otherwise better offers, and nothing in this Order shall be read to pre-approve Debtors' proposed marketing efforts or the proposed sale itself.

7. This Order does not apply to the Columbia Nitrogen Parcel owned by Ashley II and more fully described in the term sheet attached to the sale motion, or to any future sale of that property.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/23/2016**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 02/23/2016

6